In the Matter of Louis Edwin Kleiman, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, March 14, 1985

### APPEARANCES OF COUNSEL

*Joseph Rosenberg* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Robert Julian Burton* for respondent.

### OPINION OF THE COURT

Per Curiam.

Petitioner, Departmental Disciplinary Committee (DDC) for the First Judicial Department, moves for an order, pursuant to the Rules of the Appellate Division, First Department (22 NYCRR 603.4 [d]), confirming a report of a hearing panel, which includes findings of fact, conclusions of law, and a recommendation that respondent, Louis Edwin Kleiman (respondent), should be suspended from practice for a period of two years. In response to DDC's motion, respondent cross-moves to disaffirm the report, insofar as it: (1) found him guilty of two allegations contained in part two of the first charge; and (2) recommended that he be suspended from the practice of law for two years.

Respondent was admitted to practice in the First Judicial Department on October 10, 1972, and he maintained an office for the practice of law in the First Judicial Department during the period covered by the charges.

These disciplinary proceedings were commenced on or about March 16, 1983, by DDC's service upon respondent of a statement of two charges.

The first charge, which consists of two parts, alleges that, between the years 1977 and 1978, respondent engaged in professional misconduct, within the meaning of this court's rules § 603.2, which involved dishonesty, deceit and misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) and (5), and of DR 7-102 (A) (5).

Part one of the first charge alleges that the respondent engaged in a scheme to defraud the Supreme Court of New York County by knowingly preparing and filing, and/or causing to be prepared and filed, false written instruments, such as summonses with notices, verified complaints, and various affidavits and affirmations, all of which contained false residency information for one or more of the parties involved in 60 matrimonial actions. Respondent knowingly misrepresented this residency information for the purpose of satisfying the venue requirements, then in effect, for bringing actions in New York County.

Furthermore, part two of the first charge alleges that, in *four* matrimonial actions brought in the Supreme Court of New York County, the respondent prepared and filed, and/or caused to be prepared and filed, affidavits of service, which respondent knew, and/or should have known, contained false statements or false information.

The second charge alleges that between the years 1977 and 1978, respondent engaged in professional misconduct, within the meaning of this court's rules § 603.2, which involved the dividing of legal fees with a nonlawyer in violation of the Code of Professional Responsibility DR 3-102.

The respondent, through his counsel, timely filed an answer to these charges. In his answer, *inter alia,* respondent: (1) admitted the allegations set forth in part one of the first charge, which deals with filing false venue information; (2) denied the allegations set forth in part two of the first charge, which deals with filing false affidavits of service. In addition, as to these allegations he asserted the affirmative defense of laches, in that allegedly the DDC's delay in making these allegations and materially and fundamentally impeded respondent's ability to

organize and present his defenses; and (3) denied the allegations set forth in the second charge, which deals with dividing legal fees with lay persons.

After the respondent filed his answer, the DDC staff counsel withdrew the second charge relating to fee splitting with non-lawyers.

The hearing, concerning both parts of the first charge, began on May 23, 1983, before the hearing panel (Panel). The hearing took six sessions and concluded on December 19, 1983. During the hearing, the DDC presented evidence against respondent, in the form of testimony and documents. The defendant put in a defense and it included his own testimony. After all the evidence had been received, the Panel found the respondent guilty of part one of the first charge, which dealt with the respondent's submission of false residency information, and they found respondent guilty of 2 of the 4 allegations, contained in part two of the first charge, which dealt with the respondent's submission of false affidavits of service.

In substance, as to the alleged misconduct related to the respondent's submission of false residency information, the Panel's guilty finding was substantially based upon the respondent's own admissions.

Furthermore, as to the two instances of alleged misconduct of the respondent relating to the submission of false affidavits of service, which deal with the cases of Karen Ollard and of Ana L. Ching, the basis for the Panel's guilty findings are set forth in its report, dated September 11, 1984.

Concerning the Karen Ollard matter, at pages 6 and 7 of the report, the Panel states, in pertinent part: "In connection with his representation of Karen Ollard, the respondent met with Mrs. Eileen Padgett, the mother of his client. At this meeting, the respondent and Mrs. Padgett discussed the matter of her son-in-law having been served with a summons with notice and verified complaint * * * Mrs. Padgett advised the respondent that sometime earlier she had written to her son-in-law asking him to consent to the divorce, but, *at no point did she ever serve him with matrimonial papers nor did she ever advise the respondent that she had personally served her son-in-law* with matrimonial papers * * * The respondent completed an affidavit of service in *his handwritting [sic] containing false statements* that Mrs. Padgett had effected personal service on her son-in-law at her place of residence and caused it to be filed with the Supreme Court, New York County, and subsequently secured a judgment of divorce for Mrs. Padgett's daughter, Karen Ollard" (emphasis supplied).

On May 23, 1983, Mrs. Padgett testified before the Panel as follows:

"Question: [by Mr. Joseph Rosenberg, staff attorney of the DDC] Did you at anytime advice [*sic*] Mr. Kleiman [respondent] that you had served him [Mrs. Padgett's son-in-law at the time] with papers?

"Answer: [by Mrs. Padgett] No".
When the respondent testified before the Panel he at no time contended that Mrs. Padgett ever told him that she had served these papers.

Concerning the Ana L. Ching matter, at page 7 of the report, the Panel states, in pertinent part: "In connection with his representation of Ana Ching, the respondent prepared or caused to be prepared an affidavit of service which contained false information that personal service had been effected on the defendant on March 22, 1978 at 'No. 42 Puerto Limo, San Jose, Costa Rica.' *Said affidavit of service was notarized in the respondent's office in New York on the very same day personal service purportedly took place.* The respondent, thereafter, prepared and executed an affirmation of regularity by attorney declaring that personal service of her summons had been made upon the defendant outside the State of New York. The respondent subsequently filed the above false affidavit and false affirmation with the Supreme Court, New York County, and secured a judgment of divorce for his client, Ana L. Ching" (emphasis added).

As mentioned, *supra,* DDC has moved to confirm the Panel's report in its entirety, while, on the other hand, the respondent has moved to disaffirm part of that report.

■ Respondent contends, in substance, that the finding of the Panel that he was guilty of the Ollard and Ching allegations, contained in part two of the first charge concerning the filing of false affidavits, should be overturned because: (1) the DDC is guilty of laches; (2) that the testimony of Mrs. Padgett is allegedly too unreliable to sustain this allegation; and (3) that the mere fact that the affidavit in the Ching matter was notarized in the respondent's office in New York on the very same day that personal service reportedly took place in Puerto Limo, San Jose, Costa Rica, is insufficient and too speculative to sustain the Ching allegation against respondent. None of these contentions of the respondent have any merit, for the following reasons: (1) as to the laches contention, the respondent, based upon the record before this court, fails to show either inexcusable delay and/or prejudice on the part of the DDC, which would justify the dismissal of these allegations, and as this court said,

in its Per Curiam opinion, in *Matter of O'Hara* (63 AD2d 500, 502) "the rule with respect to a speedy trial applicable in a criminal prosecution does not apply to disciplinary proceedings"; (2) as to the respondent's contention concerning the quality of the testimony of Mrs. Padgett, the Panel had the opportunity to observe and compare her testimony and demeanor concerning the Ollard matter with the respondent's testimony and demeanor in response, and their conclusion was that the respondent was guilty, and there is no justification for us to disturb the Panel's finding; and (3) as to the respondent's contention concerning the quality of the evidence in the Ching case, the Panel had the opportunity to examine the documents and to hear the respondent's own explanation concerning their preparation, and again there is no justification for us to disturb the Panel's conclusion that the defendant was guilty of the Ching allegation.

Moreover, the respondent contends that the sanction of a two-year suspension, recommended by the Panel is unduly harsh, even though he admits that he filed numerous false affidavits concerning his clients' residences in part one of the first charge. In substance, respondent argues that those false affidavits were only technical violations since they simply pertained to allegedly "dead" marriages; and they permitted the respondent to charge these clients lower fees, in view of the fact that he placed the venue in New York County. These contentions of the respondent are not only meritless, but they also demonstrate a complete lack of understanding on the part of the respondent of his obligation as an attorney "to maintain the highest standards of ethical conduct" (preamble and preliminary statement to the Code of Professional Responsibility).

In 1973, the respondent was admonished for improper advertising in connection with his legal practice.

■ Considering the respondent's continuous pattern of submitting false documents to the Supreme Court, we find the Panel's recommendation of a two-year suspension to be inappropriate. In fact, "[t]hese recurring evidences of lack of professional responsibility demonstrate that respondent is not fit to remain at the Bar." (*Matter of Anderson,* 23 AD2d 326, 327 [1st Dept 1965].)

Accordingly, the motion of the petitioner to confirm the Panel's report is granted in part and denied in part; the respondent's cross motion is denied in its entirety; and, it is ordered that respondent is disbarred and his name stricken from the roll of attorneys and counselors-at-law.

MURPHY, P. J., KUPFERMAN, SULLIVAN, ROSS and CARRO, JJ., concur.

Petition granted only to the extent of confirming petitioner's finding that respondent was guilty of misconduct, and disaffirmed insofar as it recommends a two-year suspension, and respondent is disbarred as an attorney and counselor-at-law in the State of New York effective April 15, 1985, and his name stricken from the roll of attorneys and counselors-at-law.