In the Matter of MATTHEW E. NEWMAN (Admitted as MAT-
THEW ELLIOT NEWMAN), a Suspended Attorney, Respon-
dent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE
FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 5, 1989

## APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Hal R. Lieberman,* attorney),
for petitioner.

*Donald J. Klein* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent, admitted to the practice of law in New York in the Second Department on February 2, 1972, at all relevant times herein maintained an office for the practice of law in the First Department.

In 1978, respondent was suspended for a period of two years by the Appellate Division, Fourth Department (Matter of Newman, 64 AD2d 145), as the result of certain activities from 1976 to 1977, in which he gave false reports to his clients in a litigated matter, drafted a spurious judicial decision, mailed a copy to his clients, and prepared and signed a Judge's order and forwarded a copy to his clients. He was reinstated on October 31, 1980.

Four years later, on November 28, 1984, respondent accepted a letter of admonition, issued by this Department's Departmental Disciplinary Committee, as a result of a charge that after his firm's representation of a client was terminated, respondent failed to promptly turn over his file to the new counsel, and attempted to have his former client execute a general release discharging his firm from any liability arising out of its representation of the client.

In September 1986, respondent commenced the representation of the proponents of a proposed cooperative conversion plan for the sale of units in a building located at 10 St. Luke's Place, New York, New York, and filed the offering plan for review with the New York State Department of Law. On or about March 30, 1987, the Attorney-General sent respondent a list of deficiencies which needed to be corrected. On October 1, 1987, the Attorney-General sent respondent a "final notice" letter which stated that unless all deficiencies were cured by an appropriate submission within one week, the proposed offering plan would be deemed abandoned. Respondent did not meet the Department's submission deadline. Consequently, by letter dated November 2, 1987, the Attorney-General's office advised respondent that the offering plan was deemed to have been withdrawn.

Respondent's reaction to the November 2, 1987 letter was to alter fraudulently the Attorney-General's October 1, 1987 letter by deleting the deficiency language and substituting wording indicating that the plan had been approved. He then photocopied the forged document so that it would look like a copy of an authentic letter, and mailed the copy to his client.

Several weeks passed and respondent failed to take any steps either to salvage his client's matter or to notify anyone (including his client) of his misdeed. The forgery was revealed in December 1987, when his client unknowingly presented the Attorney-General with copies of the forged letter.

On May 11, 1988, a criminal complaint was filed against respondent in New York County, charging him with one count of forgery in the third degree in violation of Penal Law § 170.05 and one count of employing a "fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale", to induce the purchase of apartments, in violation of New York General Business Law § 352-c (1) (a), both misdemeanors. On that same day, pursuant to a plea bargain, respondent pleaded guilty to the latter crime and was sentenced to a conditional discharge. Respondent also consented to a permanent injunction which enjoined him from working directly or indirectly in the sale of real estate, securities or investments.

On October 6, 1988, the Departmental Disciplinary Committee filed a "serious crime" petition pursuant to section 90 (4) of the Judiciary Law, predicated upon respondent's conviction. Respondent cross-moved on October 14, 1988 for, *inter alia,* a hearing to present mitigation evidence pursuant to Judiciary Law § 90 (4) (h). On January 10, 1989, this court suspended respondent from practice until further order of the court, and referred the matter to the Committee to report and recommend with respect to the issue of final sanction.

At the hearing respondent testified that beginning in 1977 he underwent psychiatric therapy on a regular basis, primarily for depression-euphoria mood swings and suicide ideation. In fact, in 1978, in mitigation of the misconduct that resulted in his two-year suspension by the Fourth Department, respondent had claimed that he was suffering from an "obsessive-compulsive disorder", for which he was undergoing treatment. The therapy continued throughout the 1980's in New York. Respondent also testified that he had a series of physical ailments during that time, including being overweight, having high blood pressure and suffering from a myriad of bone problems. According to respondent, it was not until February 1988 that the cause of all his medical and psychiatric problems was discovered. At that time, a benign tumor on respondent's adrenal gland was found. Respondent claims that he suffered from Cushing's syndrome, a condition caused by secretions of excessive cortisol levels in respondent's blood-

stream as a result of the adrenal tumor. Once the tumor was removed, respondent's abnormal hormonal levels decreased to normal levels and respondent testified that his depression and suicide ideation also dissipated. Respondent argued that at the time of his crime, unbeknownst to him, he was suffering from Cushing's syndrome. According to respondent, persons afflicted with Cushing's syndrome may suffer a host of physical ailments and psychiatric disturbances, including depression, mood swings, irritability and disturbed concentration and memory. Respondent argued that his forgery of the Attorney-General's letter was induced by the psychiatric abnormalities caused by Cushing's syndrome. Two of respondent's treating physicians testified on his behalf.

On June 1, 1989, the Hearing Panel issued its written report recommending to the court that an order be entered disbarring respondent from the practice of law. In pertinent part, the Panel stated: "[R]espondent's conduct was deliberate and methodical and not the result of an isolated impulse. Respondent had time to correct his misdeed, failed to do so and, by his own testimony, caused significant financial harm to his client." The Hearing Panel concluded as follows:

"The Panel finds that respondent's forgery-related activity constituted grave misconduct. Respondent's prior suspension for similar behavior also weighs heavily.

"While the Panel is sympathetic to respondent's medical problems, they do not excuse or explain his behavior. Nor was there evidence that respondent was incapable of acting responsibly, or that his conduct was unintentional or inadvertent."

Respondent seeks an order disaffirming the Hearing Panel's report, imposing a sanction less severe than disbarment and directing that any sanction be imposed as of January 17, 1989, the date of his original suspension. In support of his cross motion, respondent contends that the overwhelming weight of the evidence establishes that there was a link between his illness, Cushing's syndrome, and his misconduct.

Respondent acknowledges that he deserves to be punished for his misconduct, but believes that suspension, rather than disbarment, would be appropriate if the Panel or this court finds a causal link between the Cushing's syndrome and his misconduct. He asks the court to apply the standards it set forth in *Matter of Winston* (137 AD2d 385) for the appropriate discipline for attorneys afflicted with drug and alcohol prob-

lems of their own choosing. Respondent asserts that his psychiatrist testified that he is presently fit to practice law, as did the witnesses who say they would retain him again as an attorney.

Respondent stands convicted of employing a "fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale", to induce the purchase of apartments, in violation of New York General Business Law § 352-c (1) (a), a misdemeanor.

Offenses involving forgery have always been considered by this court to be grave and deserving of the severest of sanctions, disbarment. *(See, Matter of Kleiman,* 107 AD2d 241), wherein respondent filed numerous false affidavits concerning residences of clients for purposes of satisfying venue requirements.)

When this court has imposed the sanction of suspension, rather than disbarment, such cases are characterized by a previously unblemished disciplinary record, the absence of fraudulent intent and significant causal mitigating factors. *(See, e.g., Matter of Halper,* 141 AD2d 201; *Matter of Baily,* 48 AD2d 411.)

The evidence offered by respondent in mitigation consists of his claim that he was suffering from Cushing's syndrome, which caused the misconduct in question. The testimony of respondent's own medical witnesses, however, fails to support his claim. Dr. Alpert, the psychiatrist who treated respondent for over 10 years, admitted that he did not diagnose the syndrome in respondent and claimed that in retrospect respondent's psychiatric symptoms were compatible with Cushing's syndrome. Dr. Alpert further admitted that he had no prior exposure to patients with Cushing's syndrome and that for the most part, his diagnosis was based upon a review of research articles.

Dr. Stein, an internist specializing in knee diseases, also did not diagnose Cushing's syndrome in respondent, but claimed that certain physical symptoms respondent had been suffering were compatible with the disease. Additionally, the records which were prepared at the time of the surgery to remove the tumor from respondent's adrenal gland contain no diagnosis of Cushing's syndrome. Even if the evidence showed that respondent was suffering from Cushing's syndrome in 1987, no evidence was presented establishing a causal link between the disease and the deliberate act of forging the Attorney-General's letter.

We cannot overlook that respondent was previously suspended for the same type of misconduct as involved here, and was formally admonished in 1984. Such a pattern of serious misconduct as evinced by respondent whenever events turn against him compels us to act decisively, not to punish respondent, but to protect the public. Additionally, as the record reflects, respondent has failed to establish a causal link between Cushing's syndrome and the misconduct involved here.

Accordingly, the motion to confirm is granted, the cross motion to disaffirm is denied, and respondent's name is stricken from the role of attorneys and counselors-at-law, nunc pro tunc as of January 10, 1989.

SULLIVAN, J. P., CARRO, MILONAS, KASSAL and SMITH, JJ., concur.

Respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, nunc pro tunc as of January 10, 1989.