[662 NYS2d 445]

In the Matter of JOSEPH J. PERRINI, JR. (Admitted as JOSEPH JOHN PERRINI, JR.), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 24, 1997

### APPEARANCES OF COUNSEL

*Eileen J. Shields* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Michael Gentile* of counsel *(Gentile & Benjamin,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Joseph J. Perrini, Jr., was admitted to the

practice of law in the State of New York by the Second Judicial Department on June 19, 1968, as Joseph John Perrini, Jr. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

A Hearing Panel held hearings on this matter over the course of nine days and sustained charges of misconduct against respondent stemming from his representations of former clients in five different transactions, and recommended that respondent be disbarred.

The Departmental Disciplinary Committee moves for an order confirming the Hearing Panel's findings of fact and conclusions of law, and imposing disbarment as a sanction.

By cross motion, respondent's attorney seeks an order disaffirming that portion of the Hearing Panel's report which sustained charges of professional misconduct against respondent, affirming that portion of the report which did not sustain charges 12 and 13, and dismissing the sustained charges. In the alternative, respondent's counsel suggests that, if this Court deems it appropriate to confirm the Hearing Panel's findings, it impose a sanction less severe than disbarment— such as public discipline.

1.  Manginelli (Charges 1 through 7)

In 1992, Joseph Manginelli retained respondent to represent him in connection with the sale of real property Manginelli owned in Staten Island. Although a first contract of sale—to BTK Building Corp.—fell through, the property was eventually sold to a Mr. and Mrs. Liharevic. Charges 1 through 4 pertain to respondent's representation of Manginelli in the aborted sale to BTK; charges 5 through 7 pertain to respondent's representation of Manginelli in the sale to the Liharevics.

(A)  Manginelli to BTK

On August 17, 1992, in connection with the contract of sale, BTK delivered a deposit of $9,700 to respondent to be held in escrow until closing. Respondent deposited the funds into an escrow account at Marine Midland Bank on September 25, 1992. During October of that year, respondent wrote checks against the Marine Midland account which reduced the balance therein to below the amount of BTK's deposit. In late October or early November, BTK's counsel notified respondent

that BTK's mortgage application had been rejected and requested the immediate return of the down payment. Respondent denied the request, informing BTK's counsel that, as a result of BTK's failure to deal in good faith in this transaction, he would retain the funds that he was then "holding in escrow" until a court determined the rightful owner. Thereafter, respondent wrote several additional checks against the Marine Midland account, entirely depleting the disputed down payment.

Meanwhile, BTK commenced an action in Richmond County to recover the down payment. In opposition to BTK's motion for summary judgment in that action, respondent submitted an affidavit to the court in which he stated, "I am prepared to tender to the Court Clerk the $9,700 contract deposit *held in my escrow account*." Despite this assertion, the escrow account then contained only $263. On June 7, 1993, BTK's summary judgment motion was granted. Two days later, respondent deposited $9,700 into an escrow account at Citibank. Then, on June 18, 1993, respondent withdrew $9,700 from the Citibank escrow account in the form of a cashier's check payable to BTK and sent it to BTK's counsel.

In defense of his actions, respondent first claimed that BTK's counsel had declared the contract to be null and void at the end of September and that, as a result, it was his legal opinion that the down payment then belonged to his client. At the hearings, Manginelli testified that he thereafter authorized respondent to use the down payment as repayment of a loan.

Based on the foregoing, the Panel concluded that respondent intentionally converted to his own use the $9,700 down payment (in violation of Code of Professional Responsibility DR 1-102 [A] [4], [5] [22 NYCRR 1200.3]) and that he misrepresented the status of those monies to opposing counsel and to the Court (in violation of DR 9-102 [B] [1] [22 NYCRR 1200.46]). Consequently, the Panel sustained charges 1 through 4. Charges 1, 2 and 4 charge respondent with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and with engaging in conduct prejudicial to the administration of justice (DR 1-102 [A] [4], [5]). Count 3 charges respondent with failing to preserve the identity of funds belonging to a third party (DR 9-102 [B] [1]).

While respondent points out that Mr. Manginelli's testimony corroborated his contention that he believed that he was entitled to the BTK down payment to satisfy a loan, the money in his escrow account was held for the benefit of BTK and his

client could not give him leave to invade the escrow. Accordingly, the Panel's finding that respondent intentionally converted to his own use the $9,700 down payment in violation of DR 1-102 (A) (4) is affirmed as are the findings with respect to the remainder of the charges.

(B)   Manginelli to Liharevic

In January of 1993, Nezir and Tanusha Liharevic signed a contract of sale for the same Staten Island property and gave respondent a $5,000 down payment to hold in escrow until closing. On February 10, 1993, the $5,000 was deposited into respondent's personal and business checking account at Citibank. By the time the transaction closed on May 11, 1993, respondent had spent the entire $5,000 on personal and business expenses. Meanwhile, however, on May 7, 1993, respondent delivered to Mr. Manginelli $5,000 from an undisclosed source.

The Hearing Panel properly rejected respondent's explanation that the bank had erroneously deposited the funds into his personal account. Among other inconsistencies, the Panel pointed out that respondent did not even have a general purpose escrow account at Citibank at the time he instructed the manager to deposit the funds. The Panel found respondent's credibility to be undermined further by the activity in the Citibank account during that time period: on February 10, 1993, the balance in the Citibank account was only $66.16; within two weeks after the down payment was deposited therein, respondent wrote checks totalling about $4,434 (for his office rent, personal mortgage, and to himself). Consequently, without those funds, respondent would have severely overdrawn his personal account.

On the basis of these findings, the Panel concluded that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation by commingling the $5,000 with his own funds and intentionally converted to his own use the escrow funds, in violation of DR 1-102 (A) (4) and DR 9-102 (A) and (B) (1). Accordingly, the Panel properly sustained charges 5 through 7.

2.   The Chiarkas Matter (Charges 8 through 13)

Six charges were asserted against respondent arising out of his representation of Marie Chiarkas on a contingency basis in a personal injury action. Ultimately, the Panel sustained four of the charges.

Briefly stated, Marie Chiarkas retained respondent in 1990 to represent her in a personal injury action against Chatham Green, the co-op apartment building where she lived. After the co-op's insurer made a $180,000 settlement offer, respondent claimed that he was entitled to a one-third contingency fee; Mrs. Chiarkas thought that he had agreed to accept any amount recovered above $150,000. After much wrangling, respondent produced a retainer agreement allegedly signed by Mrs. Chiarkas which supported his position. Mrs. Chiarkas denied ever having signed such an agreement. Eventually, respondent and Mrs. Chiarkas agreed to submit the fee dispute to binding arbitration, which concluded in March of 1992.

Charge 8 alleged that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) by attempting to gain a larger fee in reliance upon a forged retainer agreement. Relying on, among other things, the testimony of its own handwriting expert, the Panel found that the signature on the retainer agreement was a forgery. It thus sustained charge 8.

Charge 9 accused respondent of failing to promptly provide Mrs. Chiarkas with a writing stating how the fee would be calculated, in violation of DR 2-106 (D) (22 NYCRR 1200.11). Since respondent did not produce the purported retainer agreement until almost one year after he was retained, the Panel sustained this charge.

Charge 10 charged respondent with failing to file a retainer agreement and closing statement for this and other personal injury cases, constituting conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5). Respondent did not file these statements until February of 1994. The Panel rejected his claim that he was unaware of his obligation to do so, noting that he had mentioned this requirement in his February 1993 posttrial brief in the Chiarkas matter and that he had previously filed such statements in an unrelated matter in 1986.

Charge 11 charged respondent with conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) for falsely stating expenses in the Chiarkas closing statement filed with the court. The closing statement indicated a $300 payment to Dr. Locke, an ophthalmologist who examined Mrs. Chiarkas. As Dr. Locke testified, and the receipt he issued reflects, that he received only $94.73 from respondent, the Panel sustained charge 11 as well.

The Panel did not sustain charges 12 and 13. Charge 12 alleged that respondent intentionally prejudiced or damaged a

client in violation of DR 7-101 (A) (3) (22 NYCRR 1200.32) by threatening to reject a settlement offer and delay an unrelated case if Mrs. Chiarkas did not agree to his fee. Charge 13 alleged a conflict of interest in violation of DR 5-105 (C) (22 NYCRR 1200.24). Prior to and during the time respondent represented Mrs. Chiarkas against the co-op, he was also representing the co-op in a variety of other matters. Noting that Mrs. Chiarkas was well aware of this fact due to her late husband's and her son's membership on the co-op board, it found that respondent has obtained Mrs. Chiarkas's prior informed consent.

### 3. The Romano Matter (Charges 14 through 16)

Charges 14 through 16 concern the alleged backdating of a letter that respondent submitted to the Bankruptcy Court in the course of his representation of Joseph Romano in a personal injury claim resulting from a fall he suffered in a hotel room at Trump Castle Hotel in November of 1989. Respondent filed suit in this matter in November of 1991. In March of 1992, he learned that the action had been stayed because Trump's Castle Association had filed for bankruptcy. In order to maintain the viability of Mr. Romano's action, respondent was required to file a proof of claim in the bankruptcy proceeding by April 20, 1992. Respondent failed to file the proof of claim.

On October 15, 1992, respondent received notice that Trump's was moving to enjoin the prosecution of all claims for which a proof of claim had not been timely filed. Response papers were due by October 30, and a hearing was scheduled for November 9, 1992. Respondent neither filed an answer to the motion nor appeared for the hearing. Instead, in a letter dated November 6, 1992, he asserted that he had timely filed the requisite proof of claim and attached a purported copy thereof. Notably, the letter bore the initials of a secretary who was not employed by him in April and referenced an adversary number that was not assigned to the case until October of 1992.

In March of 1993, respondent filed a motion in the Bankruptcy Court asking the court to accept the April letter or to allow the late filing of another proof of claim on behalf of Mr. Romano. At a hearing on the motion, respondent testified under oath that the April letter had been prepared and mailed in April. According to respondent, the inconsistencies in the letter were attributable to misplaced efficiency of his new sec-

retary, who made several corrections before reprinting the letter from his word processor. The Bankruptcy Judge denied respondent's motion, describing his rendition of events as stretching credibility.

Like the Bankruptcy Court, the Hearing Panel rejected respondent's testimony and found that the alleged proof of claim letter had not been prepared in April of 1992, but after the fact and had been backdated. It also found respondent's credibility to be undermined by the fact that he was constantly changing his testimony on a number of key issues. Essentially, the Panel found respondent's version of the events "a pure fabrication."

Accordingly, the Hearing Panel sustained charges 14, 15 and 16. Charge 14 charged respondent with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4) for backdating the April letter. Charge 15 alleged that respondent falsely testified under oath that the April letter had been sent in April, constituting violations of DR 1-102 (A) (5) (conduct prejudicial to the administration of justice) and DR 1-102 (A) (4). Finally, charge 16 accused respondent of neglecting a legal matter entrusted to him in violation of DR 6-101 (A) (3) (22 NYCRR 1200.30), based on his failure to timely file a valid proof of claim in the bankruptcy proceeding.

4. The PCK Restaurant Matter (Charge 20)

Charge 20 alleged that respondent entered into a contingency fee agreement in a commercial landlord-tenant matter without promptly providing his client with a writing as to his fees, in violation of DR 2-106 (D). As respondent admitted the relevant facts, the Panel sustained this charge.

5. Financial Recordkeeping Violations (Charges 22 through 24)

The final three charges stem from respondent's failure to maintain appropriate records regarding his escrow accounts. According to DR 9-102 (D) (1) and (2), an attorney is required to maintain for seven years specific records of all deposits in and withdrawals from his escrow accounts, including the date, source and description of each transaction, the names for whom all funds are held, and the amount attributable to each name. The Panel found that by admitting the facts underlying the charges, respondent admitted violating the rules and sustained these charges. The Panel additionally held that respondent's

failure in this regard reflected adversely on his fitness to practice law, in violation of DR 1-102 (A) (8) (formerly [6] and [7]).

While respondent did not have any record of prior discipline, the Panel found respondent's failure to admit the errors of his ways or accept any responsibility for his action throughout the proceedings to be especially aggravating.

Although respondent did present two character witnesses to testify on his behalf, the Panel found that he failed to provide any significant mitigating factors for it to consider. The Panel similarly rejected the two arguments he raised in opposition to mandatory disbarment. First, he argued that there was no evidence of venality with respect to his conversion of clients' funds, as required to find a violation of DR 1-102 (A) (4). The Panel properly rejected this argument, observing that respondent acted with venal intent in both instances of conversion. Second, respondent argued that, viewing each charge separately, disbarment is not warranted solely on the basis of any singular charge. The Panel also rejected this argument, finding that several of the individual charges would warrant disbarment and that, in any event, the sheer number and nature of the charges warrant such a sanction.

We find that the sanction of disbarment is merited by respondent's intentional conversion of client funds (*see, Matter of Ampel*, 208 AD2d 57), as well as by his repeated acts of dishonesty, fraud and misrepresentation (*see, e.g., Matter of Kroll*, 212 AD2d 220, *appeal dismissed* 86 NY2d 855).

The findings of the Hearing Panel as to the charges are supported by the evidence and consistent with legal precedent.

We have consistently held that the intentional conversion of client funds constitutes grave misconduct warranting the sanction of disbarment (*see, Matter of Glazer*, 218 AD2d 411; *Matter of Schmidt*, 145 AD2d 103).

The sanction of disbarment is additionally warranted by the six findings of professional misconduct involving acts of dishonesty, fraud and misrepresentation. As mentioned, the charges in this regard include that respondent submitted forged documents to several courts. This Court has consistently found offenses involving forgery to be grave infractions meriting the severe sanction of disbarment (*see, e.g., Matter of Newman*, 152 AD2d 203 [disbarment warranted for forging letter from Attorney-General approving cooperative plan]).

This Court is similarly unsympathetic to lawyers, like respondent, who engage in intentional acts of dishonesty over

extended periods of time (*see*, *Matter of Kroll*, 212 AD2d 220, 224, *supra* [disbarment warranted by pattern of dishonesty over extended period of time, including false testimony at deposition and hearing]). In the instant case, the Panel found respondent's misconduct spanned the entire time that he was in private practice.

In addition, throughout the disciplinary proceeding, respondent has refused to acknowledge his mistakes or accept any responsibility for his actions. Instead, he has repeatedly attempted to cover up his mistakes and blame others for those that he could not cover up.

We find disbarment most appropriate given the magnitude of respondent's misconduct and his inability to accept responsibility therefor.

Accordingly, the motion by the Disciplinary Committee confirming the Hearing Panel's report is granted and the respondent's cross motion denied. The respondent's name is therefore ordered stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately.

MILONAS, J. P., ELLERIN, NARDELLI, TOM and ANDRIAS, JJ., concur.

Petitioner's application to confirm the Hearing Panel's report is granted, respondent's cross motion to disaffirm said report is denied, and respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective immediately.