[700 NYS2d 12]

In the Matter of MARK I. ADELMAN (Admitted as MARK IAN ADELMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 16, 1999

### APPEARANCES OF COUNSEL

*Eileen J. Shields* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Mark I. Adelman*, respondent *pro se.*

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in New York by the First Judicial Department on October 30, 1995, as Mark Ian Adelman. At all times relevant to these proceedings, re-

spondent maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv) immediately suspending respondent from the practice of law based upon uncontested evidence that respondent has engaged in professional misconduct and respondent's failure or refusal to pay money owed a client which debt is demonstrated by a judgment. The Committee's motion is predicated upon the uncontested evidence that respondent has failed to repay funds he owes his client, Stella Joslin, for which she obtained a judgment against him. Additionally, in the course of its investigation, the Committee obtained uncontested evidence that respondent converted escrow funds. Based upon this uncontested evidence, as well as the fact that respondent has an admitted gambling problem, the Committee believes that his immediate suspension is necessary to protect the public while these disciplinary proceedings continue.

In the fall of 1997, Stella Joslin retained respondent in connection with the refinancing of her home and subsequently authorized respondent to negotiate a lower payoff amount of various debts she owed to several credit card companies. Respondent said he would advance the funds to pay off the accounts and Ms. Joslin could reimburse him. Although she reimbursed respondent for amounts he claimed to have paid, Ms. Joslin subsequently discovered that the amounts had not been credited to her accounts. Respondent claimed that he had sent two checks to two banks, Citibank and MBNA; however, those checks were never received by the banks and the Committee's investigation revealed that there was no money in respondent's business account at the time he allegedly mailed the checks.

On September 2, 1998, Ms. Joslin filed an action in Small Claims Court to recover the $3,350 she had paid respondent, plus interest and costs. Respondent appeared in court and stipulated to a settlement of her claim, which the court so ordered on November 18, 1998. In the stipulation, respondent agreed to pay Ms. Joslin a total of $3,900 in payments of $650 per month starting in December 1998. The settlement further provided that if respondent defaulted on the monthly payments, any remaining debt would immediately become due and Ms. Joslin could enter judgment without further notice.

In December 1998, respondent paid Ms. Joslin $650; in January 1999, he paid her $450. On March 10, 1999, Ms. Joslin

obtained a judgment on default after stipulation for $2,800 plus interest and costs, for a total of $3,198.42. On May 12, 1999, two days before his deposition before the Committee, respondent paid Ms. Joslin $250, but no additional payments have been forthcoming.

Respondent has also not provided the Committee with a consistent explanation for the failure of Ms. Joslin's credit card companies to receive his $1,600 and $1,750 business account checks. After Committee staff informally advised respondent that his story of two separate entities losing his checks was rather incredible, respondent testified at his May 17, 1999 deposition that, upon a search of his office for bank records, he discovered a sealed envelope mixed in with about 100 canceled checks. In that envelope, he discovered the $1,750 he had made out to Citibank. He testified that the envelope was addressed and stamped, but he had thrown it away. Respondent asserted that the MBNA check had been sent and he did not know why it was never credited.

Respondent also testified at his deposition that he did not worry about whether he had sufficient cash funds to cover the business account checks because his bank had always covered his checks even if he did not have sufficient funds. However, as the Committee points out, respondent did not need the bank to cover his checks since Ms. Joslin immediately reimbursed him. However, rather than depositing the checks into his business account, respondent cashed Ms. Joslin's checks as soon as he got them.

In his answer, respondent advances the same defenses propounded in his deposition testimony: that the Citibank check was accidentally not mailed and the MBNA check inexplicably was not credited. Notably, respondent has no explanation for writing the checks at a time when his business account balance was minimal or did not exist at all, and he fails to address the fact that he cashed his client's checks which were intended to reimburse him.

Although respondent does not admit to a scheme to obtain cash from his client, he nevertheless has offered no credible evidence in support of his defenses. The uncontested evidence shows that respondent was in dire financial straits; that he intentionally wrote checks on an account that he knew had no funds; that he immediately cashed checks he received from his client; and that he did not try to stop payment on the checks even after learning that the credit card companies had not received them.

Moreover, the small claims judgment obtained by his client against respondent is a basis in and of itself to suspend respondent pursuant to 22 NYCRR 603.4 (e) (1) (iv). By his stipulation of settlement respondent admitted that he owed the client $3,900 and he has not fully paid this judgment.

Pursuant to subpoena, the Committee also obtained records from Citibank concerning respondent's IOLA account. Such records demonstrate that respondent converted funds intended to be maintained in escrow for a real estate closing.

Respondent represented a couple who were selling their Amityville home. On February 13, 1997, respondent deposited into his escrow account a check in the amount of $10,000 from the buyers. The contract of sale, dated February 11, 1997, required respondent to maintain the contract deposit in his escrow account until the closing, which took place on April 17, 1997. However, as of March 4, 1997, the balance in respondent's escrow account fell below $10,000 and continued to drop until April 7, 1997, when it was $1,000. On April 16, 1997, the day before the closing, respondent deposited $9,000, bringing the balance back up to $10,000. At the closing, he disbursed $10,000 to the sellers.

During the period between February 13, 1997 and April 16, 1997, respondent was depleting escrow funds by writing checks to himself. While respondent claimed that these funds had been used to cover legal fees or expenses related to legal work he was doing for his uncle, this does not constitute a defense since respondent was using escrow funds without the knowledge or consent of his client.

In his answer, respondent asserts for the first time that he was unaware that his escrow account had fallen below the required amount because the bank had sent statements to the wrong address. The day before the closing, respondent went to the bank and, discovering the shortfall, rectified the situation. According to respondent, this evidence shows that he did not intentionally convert the escrow funds.

However, as the Committee points out, respondent has not meaningfully controverted the evidence showing that he misappropriated the downpayment funds.

In addition to the foregoing evidence regarding the Joslin matter and respondent's misuse of escrow funds, the Committee maintains that the public needs to be protected because respondent has a lifelong gambling habit. While respondent is now obtaining treatment for his gambling problem, his continued abstinence cannot be verified or monitored.

Accordingly, in light of the foregoing, the petition for an order pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv) should be granted, and respondent suspended from the practice of law, effective immediately, pending the disposition of the disciplinary proceedings against him and until further order of this Court.

ELLERIN, P. J., ROSENBERGER, TOM, ANDRIAS and BUCKLEY, JJ., concur.

Motion granted and respondent suspended from the practice of law in the State of New York, effective the date hereof, pending the disposition of disciplinary proceedings against him and until the further order of this Court.