[724 NYS2d 41]

In the Matter of ROBERT G. HARLEY (Admitted as ROBERT GEORGE HARLEY), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 19, 2001

### APPEARANCES OF COUNSEL

*La Trisha A. Wilson* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Susan Brotman* of counsel (*Gentile Brotman Maltz & Benjamin, LLP*), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Robert G. Harley was admitted to the practice of law in the State of New York by the Second Judicial Department on October 19, 1966, as Robert George Harley. At all times relevant to this proceeding he has maintained an office for the practice of law within the First Judicial Department.

The Departmental Disciplinary Committee moves pursuant to 22 NYCRR 603.4 (d), Judiciary Law § 90 (2), and the doctrine of collateral estoppel, for an order finding respondent guilty of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (4), (7) and DR 2-106 (a) (22 NYCRR 1200.3, 1200.11); referring this matter to a Referee to be appointed by this Court for a hearing as to sanction only; and temporarily suspending respondent from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv).

The requested application of collateral estoppel is based upon determinations made in an action brought against respondent by his former clients, Angelina and Nathan Orrico. In May 1987, the Orricos retained respondent's firm, Harley & Browne, to represent them in a medical malpractice action. In 1992, following a trial, the jury returned a $10.7 million verdict. Subsequently, by letter dated April 13, 1993, respondent advised the Orricos of a $2.3 million settlement offer and recommended its acceptance. The letter also included the following statements, which are at the heart of this matter:

> "It has been our [the law firm's] understanding that we have been retained as your attorneys on a contingency fee basis of one third of the recovery after the deduction of out of pocket expenses. It is our recollection that a written retainer setting forth this arrangement was signed by you at the outset of this case. Unfortunately we cannot find this retainer in our files so it will be necessary for you to sign a new one at this time, since we are required by law to file it with the Court.

> "Because some changes in the laws regarding medical malpractice actions have been enacted in the last few years, a retainer signed today would require us to file papers with the Court, specifically in this case, with Judge McGee, asking permission for this fee. Otherwise the law requires us to charge

a fee that would be smaller than the one third we have agreed upon.

"We can avoid going back to the Court by your signing a predated retainer agreement that expresses the terms that we have, in fact, been operating under. You have agreed to do so and, at the same time as the signing of a copy of this letter, you are signing the retainer."

The Orricos signed the enclosed retainer agreement, which respondent had backdated to May 1, 1985 (two years prior to their actual retention of the firm), providing for a contingency fee of 33⅓% of any sum recovered. Thereafter, on April 16, 1993, respondent filed an affirmation with the court asserting that this agreement was the original retainer agreement, and explaining that the "Retainer Statement in the underlying medical malpractice matter was not timely filed due to an oversight." Based upon this backdated retainer, respondent received a fee of $759,943.10, plus expenses. The maximum fee allowable, had the court applied the sliding scale set forth in Judiciary Law § 474-a, which statute became effective July 1, 1985, would have been $377,982.30.

In January 1994, the Orricos found a copy of their initial retainer agreement dated May 20, 1987, which, while providing for a 33⅓% contingency fee, contained a rider setting forth the statutory sliding scale, with a reservation of Harley & Browne's rights to move for leave to collect additional compensation. The Orricos informed respondent that they found the original agreement.

After unsuccessfully attempting to resolve the issue of the legal fee to which respondent was entitled, in November 1994, the Orricos commenced an action against respondent, his partner and his law firm, alleging that the defendants converted $381,302.84 by taking a legal fee over and above the amount permitted either by statute or the 1987 retainer agreement, thereby entitling them to treble damages under Judiciary Law § 487. Respondent's firm then made a motion in the medical malpractice action for an award of attorney's fees equal to a full one third of the judgment obtained, rather than the amount to which it was entitled by application of the fee scale set forth in Judiciary Law § 474-a. This motion was denied, with the explanation that the statutory fee schedule provided for adequate compensation.

In the Orricos' action against respondent and his law firm, the plaintiffs were granted summary judgment on their claims

for conversion and breach of the retainer agreement, and the jury found in favor of the Orricos on their claim that respondent violated Judiciary Law § 487, pursuant to which they were awarded treble damages based upon the excess legal fee in the amount of $381,960.17.

## Collateral Estoppel

Petitioner Committee has satisfied the requirements for invoking collateral estoppel (see, Schwartz v Public Adm'r of County of Bronx, 24 NY2d 65). There is no question that respondent had notice and a full and fair opportunity to be heard, since he was a defendant in the Orrico v Harley litigation, he had ample notice of the claims against him, he launched a vigorous defense, he testified at trial, he was represented by counsel, and he was afforded the opportunity to appeal any adverse decision and order, as well as the jury verdict, which he chose not to do. Further, the pertinent factual and legal issues decided in connection with Orrico v Harley are identical to those that must be decided in this disciplinary proceeding.

It is established by the rulings in that litigation that respondent made false statements to the Orricos with the intent to deceive them and in order to induce them to sign a second retainer agreement, backdated to a date substantially earlier than his actual retainer, giving him and his law firm a greater fee than that to which they were entitled either by agreement or by statute. This proven conduct demonstrates that respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (a) (4) (see, Matter of Perrini, 232 AD2d 138). Additionally, by fraudulently breaching the actual retainer agreement they entered into, as determined in the order granting the Orricos summary judgment, respondent engaged in dishonest conduct which adversely reflects on his fitness to practice law in violation of DR 1-102 (a) (7) (see, Matter of Segall, 218 AD2d 331). To this extent the ethical violation is conceded by respondent.

Further, the rulings made in Orrico v Harley also establish that respondent collected an excessive fee in violation of DR 2-106 (a). The prior judgment need not contain a specific recitation that the fee collected by respondent was excessive as defined in DR 2-106 (a); it is sufficient that the judgment encompasses rulings requiring that legal conclusion. These rulings include the court's award of summary judgment to the Orricos on their conversion claim, based upon the unchallenged fact that the defendants had received and retained an unauthorized fee which exceeded the amount permitted by statute or

the 1987 retainer agreement, and the determination after the damages trial that defendants, including respondent, were "responsible for the return of the *excess legal fee* they appropriated." Indeed, the conclusion that the fee was excessive is also mandated by the order in the underlying medical malpractice action in which the court declined to approve, nunc pro tunc, respondent's belated request for approval of the legal fee that his firm had already taken, finding that there were no extraordinary circumstances warranting a departure from the statutory fee schedule.

It being established that respondent violated DR 1-102 (a) (4), (7) and DR 2-106 (a), the issue of the appropriate sanction should be determined following a hearing before a Referee.

*Interim Suspension*

The Departmental Disciplinary Committee requests that this Court immediately suspend respondent from the practice of law pending the conclusion of disciplinary proceedings against him, pursuant to 22 NYCRR 603.4 (e) (1) (iii) and (iv). That Court rule permits this Court to suspend an attorney from the practice of law pending consideration of disciplinary charges "upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest," based (as pertinent here) upon:

> "(iii) other uncontested evidence of professional misconduct; or,

> "(iv) the attorney's willful failure or refusal to pay money owed to a client, which debt is demonstrated by an admission, a judgment, or other clear and convincing evidence."

While respondent does not dispute the showing that he is guilty of professional misconduct, he argues that the element of an immediate threat to the public interest is lacking, contending that the assertion that he poses an immediate threat to the public interest is negated by the six years that the Committee permitted to elapse between the time it learned of the alleged misconduct and the time it made this application. Respondent also relies on the extensive array of letters sent in by members of the legal community, attesting to his outstanding character, to demonstrate that he does not pose an immediate threat of harm to his clients or to the profession, and that as a matter of discretion, interim suspension should be denied.

However, the Committee's decision to delay proceeding in this matter does not serve as an appropriate basis for a deter-

mination under 22 NYCRR 603.4 (e) (1). In declining to proceed prior to a determination of the civil litigation brought against respondent by the Orricos, the Committee simply left open the issue of whether respondent was guilty of the alleged professional misconduct, pending a determination in the context of the civil litigation.

Moreover, notwithstanding respondent's strong show of support from the legal community, an interim suspension is appropriate pursuant to 22 NYCRR 603.4 (e) (1) (iv), based upon respondent's complete failure to satisfy *any* portion of the $1.5 million judgment awarded to the Orricos (*see, Matter of Adelman*, 263 AD2d 160). Respondent fails to adequately address this showing. His explanation of how the improperly-obtained money was spent (one third to the referring attorney, and the balance used to pay expenses of the financially-strapped firm), does not vitiate the established fact that money that should have gone to his clients was used for the benefit of his firm, and by extension, himself. His unsuccessful attempts to settle the claim with the Orricos do not change this; the Orricos had no obligation to settle the claim for less than its full value or upon a repayment plan structured by respondent. Notably, while respondent's law firm was forced into chapter 7 liquidation, respondent has not filed for personal bankruptcy.

We finally note that respondent's handling of the retainer agreement and his attempt to deceive the court in the matter of his fee also constituted conduct prejudicial to the administration of justice (*see*, DR 1-102 [a] [5]). Specifically, by stating, in his affirmation to the court in the medical malpractice matter, that "the retainer statement in the underlying medical malpractice matter was not timely filed due to an oversight," he purposely misled the court, implying that the retainer statement filed with his affirmation was the original agreement and that the full one-third fee was proper based on the agreement. Respondent's deception was even more egregious because the retainer agreement he filed with the court was backdated to a date two years prior to the date of his actual retention by the Orricos, which earlier date resulted in the avoidance of the sliding scale for such legal fees required by Judiciary Law § 474-a, which statute became effective on July 1, 1985.

Accordingly, the Committee's petition for an order finding respondent guilty of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (4), (7) and DR 2-106 (a), based on findings rendered by the Supreme Court, New York County, in *Orrico v Harley* (Index No. 131692/94),

should be granted, and this matter referred to a Referee to consider evidence in mitigation or aggravation, if any, and to recommend the appropriate sanction. Finally, respondent should be suspended from the practice of law, effective immediately, and until such time as the disciplinary matters before the Committee have been concluded and until further order of this Court.

SULLIVAN, P.J., NARDELLI, WILLIAMS, RUBIN and SAXE, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective May 18, 2001, until the further order of this Court.