[826 NYS2d 8]

In the Matter of BERTHOLD H. HOENIGER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 28, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Eileen J. Shields* of counsel), for petitioner.

*Hinshaw & Culbertson LLP.* (*Hal R. Lieberman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Berthold H. Hoeniger was admitted to the practice of law in the State of New York by the First Judicial Department on December 4, 1950. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department. Respondent is also admitted to practice law in Connecticut.

The Departmental Disciplinary Committee now seeks an order immediately suspending respondent from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (iii) on the basis of uncontested evidence of professional misconduct which threatens the public interest. It also seeks an order suspending him indefinitely pursuant to 22 NYCRR 603.16 (b) (1) and (c) (1) on the ground that he is physically incapable of practicing law. We grant the motion to the extent that it seeks suspension based upon uncontested evidence of professional misconduct.

Between 1986 and 2001, respondent represented client A, and the two became friends. In 2001, client A filed complaints in both New York and Connecticut alleging that respondent had failed to repay money he had borrowed between 1994 and 1995. The client also complained that respondent had sold real property which he had pledged as security for the loan. The New York Disciplinary Committee took no action pending the outcome of Connecticut disciplinary proceedings.

In April 2003, the Connecticut Grievance Committee reprimanded respondent for engaging in a business transaction with a client without advising that client to seek independent counsel. In June 2003, the New York Disciplinary Committee began its own investigation into client A's complaint. In addition, the Connecticut Grievance Committee began a second investigation into respondent's conduct in connection with client A based upon allegations that respondent had lied in a title affidavit. Chief disciplinary counsel in Connecticut wrote to the New York Disciplinary Committee, stating that he believed there was "clear evidence of either perjury or bank, mail, and wire fraud (maybe all of the above)."

In February 2005, in the Connecticut proceeding, respondent stipulated to a one-year suspension based only upon his conduct with respect to the title affidavit, but he withdrew the stipula-

tion when he learned that New York would likely issue reciprocal discipline. In July 2005, Connecticut Superior Court decided that New York had the greater interest in disciplining respondent and it deferred to this state.

The New York Disciplinary Committee investigation revealed that in August 1994, respondent asked client A to lend him $75,000. As security, respondent pledged the deed to property in Connecticut. He signed a promissory note to repay the money in one year at nine percent interest, and a confession of judgment.

Upon receiving the loan, respondent deposited the $75,000 into his personal and business bank accounts, which, until then, had a combined total of approximately $6,000. A few days later respondent sent copies of his bank statements to his mortgage broker in connection with a loan for $152,000, to refinance a second mortgage on his residence. Respondent completed the mortgage application, certifying that all information therein was true and correct, when, in fact, he had concealed a number of debts, including the debt to client A, all material to respondent's creditworthiness.

In 1995, respondent asked client A for another loan for $25,000 and he sent the client a confession of judgment for that amount. Client A only gave him $10,000. Over the next four years, client A frequently asked to be repaid, but respondent did not do so.

In 1999, without notice to client A, respondent sold the property he had pledged as security for the loan. During the course of the sale, respondent submitted an affidavit to the title company falsely stating that he did not know of any other claim that could be made to the property. He received $40,000 in proceeds from the sale, which he did not apply towards his debt to his client.

In 1999, client A learned of the sale of the property, and insisted upon repayment of the loan. Beginning in January 2000, respondent began to repay approximately $1,000 a month for 14 months, which was just interest on the debt. By then, respondent owed client A $135,000 in principal and interest. In 2001 respondent filed for bankruptcy, and his debt to client A was discharged. Client A then brought the instant disciplinary complaints.

Respondent's unsworn answer and submissions admitted borrowing the funds, and stated that the client rejected the deed as security. The Disciplinary Committee took respondent's deposi-

tion. He was accompanied by counsel and invoked his Fifth Amendment privilege against self-incrimination, refusing to answer any questions about client A's allegations, his mortgage application, or where he maintained his law practice's escrow account. The Disciplinary Committee staff notified respondent that an adverse inference could be drawn from his refusal to answer questions. A few days later, respondent's counsel informed the Disciplinary Committee that respondent had been injured in an automobile accident and would not be able to participate in the disciplinary hearing.

The Disciplinary Committee then brought the instant motion. While the evidence supporting respondent's claim of physical incapacity is inadequate, there is abundant uncontested evidence of professional misconduct sufficient to grant the Disciplinary Committee's interim suspension motion on this ground. The Committee has presented clear evidence of respondent's professional misconduct which immediately threatens the public interest. We have consistently held that immediate suspension is the appropriate sanction for similar offenses (*see Matter of Muraskin*, 286 AD2d 186 [2001]; *Matter of Adelman*, 263 AD2d 160 [1999]; *Matter of Pantoja*, 200 AD2d 110 [1994]).

Accordingly, the Committee's motion should be granted to the extent that it seeks an order suspending respondent pursuant to 22 NYCRR 603.4 (e) (1) (iii), and respondent is suspended from the practice of law, effective immediately, until the conclusion of pending disciplinary proceedings, and until further order of this Court.

MAZZARELLI, J.P., FRIEDMAN, SULLIVAN, CATTERSON and MALONE, JJ., concur.

Respondent suspended from the practice of law in the State of New York, effective the date hereof until such time as disciplinary matters pending before the Disciplinary Committee have been concluded and until further order of this Court.