[630 NYS2d 512]

In the Matter of ARTHUR H. KROLL, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 20, 1995

### APPEARANCES OF COUNSEL

*Deborah A. Scalise* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Michael S. Ross* of counsel *(LaRossa, Mitchell & Ross,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Arthur H. Kroll, was admitted to the practice

of law in the State of New York by the First Judicial Department on December 13, 1965. At all times relevant to this proceeding, he maintained an office for the practice of law in the First Judicial Department.

On or about August 6, 1993, respondent was served with a notice and statement of charges, involving falsified expense reimbursement claims for the period 1987 through 1990. The charges also alleged that respondent failed to maintain proper records with respect to these expenses and lied to the Committee when questioned under oath about these allegations.

Respondent was a senior partner in Patterson Belknap Webb & Tyler at the time these improper claims came to light. The firm conducted an internal investigation and then retained Price Waterhouse to conduct a formal investigation. Based upon the findings of this investigation, the law firm filed a complaint with the Departmental Disciplinary Committee for the First Judicial Department. The firm then reimbursed all its clients for overcharges with interest, and respondent was forced to resign from the partnership.

Price Waterhouse determined that respondent attributed expenses to clients which were personal in nature; that he altered receipts to increase the alleged expense incurred in order to receive additional reimbursement; and further, that he ripped or tore receipts so that any information which would identify the expense would be missing.

The findings of the Hearing Panel are in accord with the findings of the Price Waterhouse investigation. In defense, respondent, while admitting the inflated and improper reimbursement vouchers, testified before the Hearing Panel that his clients and his partners were aware of the irregular claims and consented thereto. This defense was conclusively rebutted by the unanimous denial by those whose assent was alleged. Additionally, respondent testified that the investigation was based on "trumped up" charges intended to prevent his departure from the firm with the loss of his four to seven million dollar annual client base.

Respondent received payment from the firm for false expenses totalling $45,626.43, comprising 168 separate vouchers which were improperly billed to various clients. The firm reimbursed these clients a total amount of $52,700, which included interest.

In furtherance of the Committee's investigation, respondent was requested to produce records pertaining to the 168 ques-

tioned expenses. In response to this request, respondent informed the Committee that he did not keep personal copies of the records, nor did he contemporaneously record the expenses on or about the date on which he claimed they were incurred.

In a sworn deposition on July 14, 1992, respondent falsely stated that he had received approval from two persons on the firm's finance committee to seek reimbursement for charges pertaining to the maintenance of his vacation home.

As a result of respondent's actions he was charged with submitting false and fraudulent billings to clients and to the firm between May 1, 1987 and July 11, 1990, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (Charge One); submitting 17 altered expense receipts thereby requesting an inflated amount for reimbursement and thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (Charge Two); and submitting numerous false and fraudulent billings to clients and to the firm between May 1, 1987 and July 11, 1990, thereby engaging in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (6) (now [8]) (Charge Three).

Respondent was further charged with failing to make, or provide sufficient information for the firm to maintain, accurate records of all receipts and disbursements at or near the time of the disbursement thereby violating 22 NYCRR 603.15 (c) and DR 9-102 (D) (after the 1990 amendments) (Charge Four); falsely testifying under oath at a sworn deposition that he had received approval from firm management to be reimbursed for his vacation home maintenance charges, when he had not, thereby engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (A) (4) (Charge Five); and falsely testifying under oath during a sworn deposition that he had received approval from firm management to be reimbursed for his vacation home maintenance charges, when he had not, thereby engaging in conduct which adversely reflects on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]) (Charge Six).

Respondent admitted that he was responsible for the submission of the 168 expense receipts for reimbursement which were either inaccurate or altered, but maintained that he did not attempt to intentionally deceive his clients. Respondent

claimed that he was given permission by the firm to submit reimbursement requests in his own unorthodox manner and no client ever complained to the firm or the Disciplinary Committee, and no client was injured by his reimbursement practices.

Specifically, respondent contended that the 168 reimbursement expenses were based upon a process he described as "rough, pro-rata allocation", whereby he allocated an expense to a client based upon the fact that he "may" have been working on the client's matter at around the time of the claimed expenses. Respondent maintained that the firm acquiesced in his method because his bills were fair, his clients were never disadvantaged and because of his extraordinary financial contribution to the firm. Respondent testified that he felt that it was particularly unnecessary for him to submit precisely accurate expense reimbursement requests for his individual clients when those clients were the beneficiaries of his consistent practice of underbilling or bill-cutting on a monthly basis. Respondent claimed that he underbilled his clients both as to hours and expenses incurred, and that these charges and expenses which he later made up, was a method of "evening out" his expenses and hours and therefore no client was overbilled, overcharged or hurt.

As to the 53 expense receipts that were cut or torn by respondent and which did not contain pertinent information with regard to the date, credit card or the place where the services were rendered, respondent admitted that the expenses were submitted without reference to daily time sheets or records. Respondent explained that this process took place weeks after the alleged events because he did not contemporaneously record the expenses. Respondent had no explanation as to why he did not submit a whole receipt, or why he did not keep and submit both parts of the receipt, or why he submitted numerous receipts for expenses which were personal in nature.

With respect to receipts with altered amounts, respondent testified that he increased the amounts on the receipts in good faith in order to be reimbursed for petty cash expenses such as cab fares, tips and drinks incurred generally in his practice, rather than simply requesting cash reimbursement without backup receipts.

Based upon the evidence presented the Hearing Panel sustained all six charges.

On January 31, 1995, the Hearing Panel issued its written report recommending that respondent should be disbarred.

By petition dated March 13, 1995, the Departmental Disciplinary Committee is now seeking an order confirming the Hearing Panel's report and imposing the recommended sanction of disbarment.

By cross motion dated May 1, 1995, respondent seeks an order disaffirming the Hearing Panel's findings of fact and conclusions of law in part, dismissing Charges One through Three and Five and Six, which are the fraud, dishonesty and fitness claims, confirming Charge Four, which is the failure to maintain accurate financial records claim, and imposing reasonable discipline on that charge alone.

We grant the motion to confirm the Hearing Panel's report, and deny the cross motion. This record conclusively establishes that respondent engaged in a pattern of dishonesty and fraud over an extended period of time; that his actions were intentional; and that he falsely testified at a sworn deposition and at the hearing in order to cover up his wrongdoing.

Respondent's misconduct was almost identical to the attorney's conduct in *Matter of Gieger* (170 AD2d 134; *see also, Matter of Salinger,* 88 AD2d 133), which holds that an attorney's theft is a proper basis for disbarment even if the conversion involved funds which were not escrow funds entrusted to the lawyer by clients, but rather, employer's money.

Respondent's actions were tantamount to conversion and his professional accomplishments do not outweigh the seriousness of his misconduct.

Accordingly, the petition by the Departmental Disciplinary Committee is granted to the extent of confirming the fact finding of the Hearing Panel, and respondent is disbarred from the practice of law and his name is stricken from the roll of attorneys and counselors-at-law in the State of New York, effective immediately. Respondent's cross motion to disaffirm the report in part and confirm the report in part is denied.

MURPHY, P. J., ELLERIN, KUPFERMAN, ROSS and MAZZARELLI, JJ., concur.

Petition granted, cross motion, *inter alia,* to disaffirm denied, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, effective July 20, 1995.