[652 NYS2d 607]

In the Matter of STEVEN P. RAPOPORT (Admitted as STEVEN PHILIP KATZ), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 7, 1997

APPEARANCES OF COUNSEL

*Deborah A. Scalise* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Steven P. Rapoport was admitted to the practice of law in the State of New York by the Second Judicial Department on September 12, 1979, as Steven Philip Katz. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

On November 14, 1995, this Court denied respondent's motion for permission to resign from the practice of law and *sua sponte* suspended him from the practice of law pending resolution of charges which had been filed against him with petitioner Departmental Disciplinary Committee (215 AD2d 32). Petitioner now seeks an order confirming a report of its Hearing Panel and recommending that respondent be disbarred.

The first three charges filed against respondent relate to his representation of Palace Realty Corp. The evidence presented to the Hearing Panel demonstrated that in 1991, respondent's former firm, Hurwitz & Rapoport, was retained by Palace to represent it with respect to the purchase of real property. Subsequent to the purchase, in June 1992, the tenants of the property began a rent strike and the principals of Palace requested that the firm hold $50,000 in escrow, which Palace was required to maintain for repairs to the property pursuant to a stipulation with the tenants. The firm subsequently deposited these funds into an escrow account.

Thereafter, respondent notified Sharook Jacobi, one of Palace's shareholders, that Jacobi owed the firm legal fees for matters unrelated to the Palace representation. He also informed Jacobi that failure to pay these fees would result in the fees being deducted from the Palace funds being maintained in the firm's escrow account.

Jacobi advised respondent and his partner, Seymour Hurwitz, that the fees would be paid, but said that they should not be deducted from the Palace account because Palace was not liable for his debts. Notwithstanding these directions, and unbeknownst to either Hurwitz or Jacobi, respondent unilaterally and without authority deducted $29,300.55 from the Palace escrow funds on July 27, 1992 and deposited the funds into the firm's business account.

Approximately one month later, Jacobi and Hurwitz learned that respondent had deducted the funds from the firm escrow account and had used the funds to pay the firm's bills. When Jacobi demanded that the funds be replaced, respondent refused.

This evidence was sufficient to sustain the first three charges brought against respondent. By intentionally withdrawing and appropriating to his own use $29,300.55 of the Palace escrow funds, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3), as charged in Charge One. By failing to maintain the Palace escrow funds intact, and by allowing the account balance to drop below the level required to maintain said funds, respondent failed to preserve the identity of a client's funds in violation of DR 9-102 (B) (1) (22 NYCRR 1200.46), as charged in Charge Two. Finally, by intentionally withdrawing and appropriating to his own use $29,300.55 of the Palace escrow funds and by failing to maintain said funds intact, respondent engaged in conduct reflecting adversely on his fitness to practice law in violation of DR 1-102 (A) (7) (now [8]), as charged in Charge Three.

Charges Four through Fifteen pertain to respondent's representation of Francis Allen in planning Allen's estate. The evidence presented at the hearing showed that, in October 1990, respondent had represented Eric Landau and his company in the purchase of E. & F. King & Co., Inc. (E&F), a Massachusetts corporation.

In early 1992, at Landau's suggestion, Allen, who was a 75% stockholder of E&F and who wished to sell his stock and retire,

consulted respondent with regard to representing him as to modifications to his estate plan, which included assets totalling approximately $4 million. Prior to retaining respondent in 1992, Allen had an existing estate plan drafted by a Boston law firm.

Respondent modified the pre-1992 estate plan by forming five separate trusts and transferred all of Allen's assets into these trusts. All pertinent documents were drafted by respondent and executed by Allen in respondent's New York office in the presence of Landau and respondent. Notwithstanding the fact that respondent counseled Allen and drafted the documents, respondent was appointed trustee for all five of the trusts. In his capacity as trustee, respondent had total control over Allen's finances.

Respondent also established a "charitable foundation", named the Yaiza Foundation, in Liechtenstein, and, in furtherance thereof, Allen executed various documents drafted by respondent. Respondent and Landau were appointed directors of Yaiza and thereby had control over its operation. Although Allen signed documents regarding Yaiza'a operation, they were not the actual foundation documents which were filed by respondent in Liechtenstein. The document filed by respondent in Liechtenstein provided that "the beneficiaries of the foundation are those persons designated by the board of the foundation". In contrast, the documents Allen executed stated that the beneficiaries of the foundation are "limited to independent entities recognized by the Internal Revenue Service of the United States of America as tax-exempt recipients of charitable contributions".

In March and April of 1992, at respondent's direction, Allen transferred assets totalling approximately $2,781,000 from various sources to respondent as trustee, who, in turn, deposited the funds into the trusts. Respondent further directed that an additional $450,000 be deposited in separate trust accounts at Citibank, Charles Schwab, Prudential Security and Dean Witter Reynolds.

Thereafter, between April 1992 and July 1992, pursuant to respondent's directions, $2,325,000 was transferred from the trusts to an account in the Bank of Liechtenstein in the name of Yaiza.

On April 12, 1992, respondent and Landau, in their capacity as directors of Yaiza, directed that $250,000 of the funds in the Yaiza account be wire transferred into respondent's personal Citibank account maintained in Suffern, New York. Respondent never accounted for the transfer of funds.

Due to concern about the handling of the trusts, Allen consulted Eric Menoyo of the Boston law firm of Palmer & Dodge in May 1992. Menoyo met with Allen on May 7, 1992, at which time Allen asked him to review the trust documents and letters drafted by respondent. On May 11, 1992, after Allen met with Menoyo at a meeting which was also attended by Landau, respondent drafted a letter, which was signed by Allen, discharging Menoyo. During the next several months, Allen requested an accounting from respondent with respect to his funds. Despite repeated requests, respondent failed to provide the accounting.

This evidence was sufficient to sustain Charges Four through Six. By intentionally converting $250,000 of Allen's funds from the Yaiza account to his own use, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4), as charged in Charge Four. By failing to maintain Allen's $250,000 from the Yaiza account intact, and by allowing the account balance to drop below the level required to maintain said funds, respondent failed to preserve the identity of client funds in violation of DR 9-102 (B) (1), as charged in Charge Five. By failing to maintain Allen's $250,000 from the Yaiza account intact, respondent engaged in conduct reflecting adversely on his fitness to practice law in violation of DR 1-102 (A) (7) (now [8]), as charged in Charge Six.

In June 1992, Allen fell and suffered a head injury which caused him to be hospitalized and, as a result of which, he exhibited signs of mental confusion. In addition, Allen's doctor had previously noted that Allen, who was approximately 70 years of age, had exhibited signs of Alzheimer-like symptoms for a few years prior to the accident.

After Allen's accident, on four separate occasions, from July 1992 through September 1992, respondent withdrew funds totalling $170,000 from Allen's Schwab account. As a result of respondent's failure to account for Allen's funds and the mental confusion caused by Allen's injury, Allen, his wife, and his accountant retained one of Allen's former attorneys, Edward Bartlett, and moved to have a conservator appointed for Allen's funds. On October 12, 1992, Allen's accountant, Edmund Dennehy, Jr., was appointed conservator by the Norfolk County (Massachusetts) Probate Court.

Thereafter, Bartlett wrote to respondent on October 29, 1992 demanding an accounting with regard to Allen's funds. Although respondent replied to this letter, his response failed to

give details as to what happened to the funds or whether they were being properly maintained at that time.

Bartlett and Dennehy met with respondent and Landau at Dennehy's office on December 4, 1992. Respondent did not bring any files or documents to the meeting and he did not provide an accounting on that date. Respondent did not disclose any information about the funds, but merely asserted that most of the assets had been transferred out of the United States and refused to disclose where they had been transferred.

This evidence was sufficient to sustain Charges Seven through Nine. By intentionally converting Allen's $170,000 from other accounts to his own, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DR 1-102 (A) (4), as charged in Charge Seven. By failing to maintain Allen's $170,000 intact and by allowing the account balance to drop below the level required to maintain said funds, respondent failed to preserve the identity of client funds in violation of DR 9-102 (B) (1), as charged in Charge Eight. By failing to maintain Allen's $170,000 intact, respondent engaged in conduct reflecting adversely on his fitness to practice law in violation of DR 1-102 (A) (7) (now [8]), as charged in Charge Nine.

In December 1992, Allen's conservator brought a civil lawsuit in Norfolk County Superior Court against respondent, Landau and others, alleging that they conspired to take Allen's funds and demanding an accounting. Shortly thereafter, respondent consented to a restraining order which prohibited him from transferring trust assets or his own assets. In addition, respondent was required to provide a full accounting and to return the funds from Liechtenstein to New York.

During discovery in the civil lawsuit, respondent provided documents showing wire transfers of $2,325,000 from Allen's accounts to the Yaiza account at the Bank of Liechtenstein. Respondent also produced letters from the Bank of Liechtenstein stating that Yaiza's funds were invested in European government bonds.

Although respondent provided an accounting in January 1993, he failed to return the funds from Liechtenstein to New York. As a result, an order to show cause was filed against respondent in Norfolk County Superior Court alleging contempt for failure to comply with the restraining order. Neither the $250,000 transfer nor the four transfers totalling $170,000 were listed in the accounting which respondent provided to the court in January 1993.

On June 4, 1993, a hearing inquiring into the contempt allegations was held. Respondent falsely testified that the $2,600,000 was "safe and sound" and had been "evenly divided between bonds held by the Bank of Liechtenstein". Respondent also produced copies of a letter which represented that the funds were invested in bonds backed by European governments. Contrary to this sworn testimony, only $30,000 of the funds had been invested in government bonds while the remainder of the funds were not being maintained in the Yaiza Foundation account. Instead, $2,225,000 had been loaned by the Yaiza Foundation to Susana Investors, a Panamanian corporation formed at respondent's direction. In turn, Susana Investors, in a simultaneous transaction, loaned the funds to Norwood Equities, a Massachusetts corporation formed at respondent's direction. In a third simultaneous transaction, Norwood loaned the funds to its principal shareholder, Landau.

Thereafter, Allen settled the civil suit. The settlement consisted of funds provided by Landau, another coconspirator and from malpractice insurance provided by respondent's former firm. Respondent did not contribute to the settlement.

This evidence was sufficient to establish Charges Ten through Fifteen. By falsely representing to the Norfolk County Superior Court that Allen's funds were being held in a trust in Liechtenstein, when in fact they had been loaned to a corporation and, ultimately, to Landau, respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of DR 1-102 (A) (4), as charged in Charge Ten, engaged in conduct prejudicial to the administration of justice in violation of DR 1-102 (A) (5), as charged in Charge Eleven, knowingly made a false statement of law or fact in violation of DR 7-102 (A) (5) (22 NYCRR 1200.33), as charged in Charge Twelve, and engaged in conduct that reflects adversely on his fitness to practice law in violation of DR 1-102 (A) (7) (now [8]), as charged in Charge Thirteen. By failing to account for Allen's funds, despite repeated requests from Allen and his new attorney to do so, respondent failed to render appropriate accounts in violation of DR 9-102 (C) (3), as charged in Charge Fourteen. Finally, by failing to account for Allen's funds, respondent engaged in conduct that reflects adversely on his fitness to practice law, in violation of DR 1-102 (A) (7) (now [8]).

Virtually without exception, attorneys such as respondent who have intentionally converted client funds must be disbarred (*Matter of Glazer*, 218 AD2d 411, 413; *Matter of Ampel*, 208 AD2d 57). Indeed, in this matter, respondent's

misconduct in converting the funds of his elderly and mentally incapacitated client is exacerbated by the fact that respondent engaged in intentional acts of dishonesty and gave false testimony before a court (*Matter of Kroll*, 212 AD2d 220, 224). Respondent not only presented no evidence supporting mitigation of this penalty, but, in fact, defaulted at the hearing, offering no reliable explanation for his failure to appear other than a claim of being physically incapable, which was wholly unsupported by credible proof. An attorney's failure to cooperate in disciplinary proceedings in itself can result in charges justifying disbarment (*see, Matter of Genzer*, 80 AD2d 114).

Accordingly, the petition seeking an order confirming the Hearing Panel's report and recommendation is granted and respondent is disbarred.

ELLERIN, J. P., NARDELLI, RUBIN, WILLIAMS and TOM, JJ., concur.

Application granted, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, effective January 7, 1997, and the order of this Court entered on December 12, 1995 amended to reflect the date of respondent's legal name change as October 18, 1979.