GIDATEX, S.r.L., Plaintiff,

v.

CAMPANIELLO IMPORTS, LTD., Campaniello Imports of Florida, Ltd., and Campaniello Enterprises, Inc., Defendants.

No. 97 Civ. 9518(SAS).

United States District Court, S.D. New York.

Sept. 20, 1999.

Thomas G. Bailey, Jr., Frank Morreale, Whitman, Breed, Abbott & Morgan, L.L.P., New York, NY, for Plaintiff.

Nathan Lewin, Tim Preso, Miller, Cassidy, Larroca & Lewin, L.L.P., Washington, DC, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendants, Campaniello Imports, Ltd., Campaniello Imports of Florida, Ltd. and Campaniello Enterprises, Inc. (collectively "Campaniello"), move for an order *in limine* precluding plaintiff Gidatex, S.r.L. ("Gidatex") from offering the testimony and reports of Gidatex's investigators and three secretly-obtained tape recordings of conversations between Gidatex's undercover investigators and defendants' employees. Campaniello claims that Gidatex's investigators used their "superior legal knowledge" to trick and manipulate defendants' sales clerks into making statements to support Gidatex's claims under the Lanham Act. Campaniello alleges that plaintiff's counsel violated the Codes of Professional Responsibility established by the American Bar Association ("ABA") and the New York State Bar Association ("NYSBA") by causing the investigators to com-

municate with a party known to be represented by counsel. Accordingly, relying on *United States v. Hammad*, 858 F.2d 834, 837 (2d Cir.1988), Campaniello urges that the evidence be precluded at trial as a remedy for the alleged violation of these ethical rules.

Campaniello's motion is denied for several reasons. First, I am not convinced that the ethical rules cited by defendants are applicable to the situation at hand. Second, even assuming these rules are applicable, Campaniello has failed to meet its burden of demonstrating that Gidatex's counsel violated them. Finally, even if Campaniello could show an ethical violation by plaintiff's counsel, preclusion of evidence at trial is not the proper remedy.

## I. Background

Gidatex, the owner of the federally registered trademark "Saporiti Italia" for use on or in connection with furniture and accessories, filed this suit on December 29, 1997, against Campaniello alleging violations of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), common law trademark infringement and common law unfair competition under New York State law.[1] For over twenty years, Campaniello acted as a licensed sales agent of Saporiti Italia furniture in the United States. This litigation arose out of Campaniello's continued use of the Saporiti Italia trademark after Gidatex terminated Campaniello's agency in 1995. Campaniello maintains that it is entitled to use the mark in connection with its sale of genuine Saporiti Italia goods remaining in Campaniello's stock at the time it was terminated.

At trial, Gidatex seeks to prove that Campaniello engaged in "bait and switch" tactics by luring customers into its showrooms and warehouse with signs and advertisements bearing the Saporiti Italia trademark, and then selling customers furniture produced by other manufacturers. To prove such "palming-off" or "passing-off", Gidatex's counsel, Thomas Bailey, of Whitman, Breed, Abbott & Morgan, hired two private investigators, Michael Kessler and Susan Peterson, to pose as interior designers visiting Campaniello's showrooms and warehouse and secretly tape-record conversations with defendants' salespeople.

### A. Investigators' Visits

#### 1. December 12, 1997

On December 12, 1997, Susan Peterson visited Campaniello's showroom on 57th Street in New York City. *See* Letter of Susan Peterson to Thomas Bailey, Counsel for Gidatex, dated December 22, 1997, attached to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine ("Pl.'s Mem."), Ex. 3. Peterson observed that a Saporiti Italia sign was the only sign on Campaniello's facade. *See id.* Once inside the showroom, Peterson noticed a closet full of large red binders bearing the Saporiti Italia name and what appeared to be binders stuffed with pamphlets also bearing the Saporiti name. The transcript from Peterson's recorded conversation with Campaniello saleswoman Marya Samawi indicates that Peterson expressed an interest in Saporiti Italia furniture and asked to view a Saporiti Italia catalogue. *See* Transcript, December 12, 1997, Pl.'s Mem., Ex. 3A. Samawi showed Peterson several pieces of furniture in the showroom and gave her several catalogues, including those by manufacturers Il Loft, Reflex and Rossi di Albizzate.

#### 2. December 15, 1997

On December 15, 1997, Peterson again visited Campaniello's 57th Street showroom and taped her conversation with an unidentified female sales clerk. After Peterson expressed an interest in Saporiti Italia furniture, the sales clerk informed her that the company "doesn't exist anymore ... it dissolved." Transcript, December 15, 1997, Pl.'s Mem., Ex. 3B at 3. A portion of their conversation follows:

1. The Complaint was served on February 23, 1998.

Investigator: So that company doesn't exist anymore then?

Sales Clerk: No.

Investigator: Okay. So would I be getting [ ] the same quality?

Sales Clerk: Oh absolutely. Absolutely.

Investigator: Would I be getting the same, I mean, if I guess the same workmanship?

Sales Clerk: Absolutely.

Investigator: What happened, they changed or something?

Sales Clerk: Well, they had a fight. The two brothers I guess.

Investigator: Okay. So where would I be able to get the Saporiti then?

Sales Clerk: Well there is one brother. Saporiti Italia as it existed doesn't exist anymore.

Investigator: So, there is no place to get their furniture?

Sales Clerk: As far as I know.

*Id.* at 4–5.

### 3. January 20, 1998

After filing its Complaint on December 29, 1997, Gidatex sent Peterson back to Campaniello's New York showroom for a third time on January 20, 1998. *See* Letter of Susan Peterson to Thomas Bailey, dated February 4, 1998, Pl.'s Mem., Ex. 4. Peterson again taped a conversation with Marya Samawi, who told Peterson that the Saporiti Italia name "is no longer there.... We have very few Saporiti items in the store.... These two brother[s] that were working together, but they split. And now the second brother is doing this other line. But it is still Saporiti.... The quality and everything is still the same." Transcript, January 20, 1998, Pl.'s Mem., Ex. 4 at 2–3.

### 4. March 27, 1998

Michael Kessler and Susan Peterson visited the Campaniello warehouse in Long Island City, New York on March 27, 1998. *See* Letter of Susan Peterson to Thomas Bailey, dated March 30, 1998, Pl.'s Mem., Ex. 5. The investigators did not record any conversations during this visit. However, they observed two Campaniello delivery trucks and a fork-lift displaying the Saporiti Italia name. They also observed Saporiti Italia furniture on sale at the warehouse.

### B. Disciplinary Rule 7–104(A)(1)

ABA and NYSBA Disciplinary Rule ("DR") 7–104(A)(1) provides:

> During the course of the representation of a client a lawyer shall not ... communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.

N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.35.

### C. Disciplinary Rule 1–102(A)(4)

Disciplinary Rule 1–102(A)(4) prohibits a lawyer from "circumvent[ing] a disciplinary rule through actions of another" and "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation." N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.3(2) & (4). Although it is not a crime in New York State for a person to record his or her conversation with another person without the knowledge or consent of the person being recorded, *see* McKinney's Penal Law § 250.00, "there is authority for the proposition that it is unethical for an attorney to do so, since such conduct is considered to involve deceit or misrepresentation." *Miano v. AC & R Advert. Inc.*, 148 F.R.D. 68, 76 (S.D.N.Y. 1993) (denying defendant's motion pursuant to DR 7–104(A)(1) and DR 1–102(A)(4) to preclude plaintiffs from offering tapes in evidence), *adopted and approved*, 834 F.Supp. 632 (S.D.N.Y.1993).

## II. Applicability of the Disciplinary Rules to These Recordings and Conversations

### A. Preserving the Attorney/Client Relationship

■ The New York State Bar Association Committee on Professional Ethics has stated that the purpose of DR 7–104(A)(1) "is to preserve the proper functioning of the attorney-client relationship". *See* Opinion of N.Y. St. Bar Ass'n., Comm. Prof. Eth. 607 (1990) at 1. Under the circumstances presented here, Gidatex's investigators did not intrude upon Campaniello's attorney-client privilege or attempt to use superior legal knowledge to take advantage of Campaniello's salespeople. Neither investigator was an attorney and neither attempted to interview party witnesses.

The investigators posed as interior designers—typical Campaniello customers. Because the Campaniello showrooms and warehouse are open to "the trade", any interior designer is welcome to enter the showroom or warehouse and express an interest in Saporiti Italia furniture. While it might have been annoying and time-consuming for Campaniello sales clerks to talk with phony customers who had no interest in buying furniture, the investigators did nothing more than observe and record the manner in which Campaniello employees conducted routine business. Having operated a furniture business for over twenty years, surely Campaniello had come to expect that customers would enter the Campaniello showroom during business hours, engage in conversation with sales clerks, make inquiries regarding various brands of furniture, and leave without making a purchase. There was no risk that Campaniello's low level employees would disclose, or were even aware of, any information protected by the attorney/client privilege. *See Miano*, 148 F.R.D. at 90 n. 23 (noting that there was no evidence that employees were "taken advantage of" or that "the information [ ] secured breached attorney-client communications").

■ As for DR 1–102(A)(4)'s prohibition against attorney "misrepresentations", hiring investigators to pose as consumers is an accepted investigative technique, not a misrepresentation. The policy interests behind forbidding misrepresentations by attorneys are to protect parties from being tricked into making statements in the absence of their counsel and to protect clients from misrepresentations by their own attorneys.[2] The presence of investigators posing as interior decorators did not cause the sales clerks to make any statements they otherwise would not have made. There is no evidence to indicate that the sales clerks were tricked or duped by the investigators' simple questions such as "is the quality the same?" or "so there is no place to get their furniture?"

### B. Policy Interests in Trademark and Unfair Competition Law

■ These ethical rules should not govern situations where a party is legitimately investigating potential unfair business practices by use of an undercover posing as a member of the general public engaging in ordinary business transactions with the target. To prevent this use of investigators might permit targets to freely engage in unfair business practices which are harmful to both trademark owners and consumers in general. Furthermore, excluding evidence obtained by such investigators would not promote the purpose of the rule, namely preservation of the attorney/client privilege.

---

**2.** For example, many cases involving the rule against "dishonesty, fraud, deceit, or misrepresentation" involve the fraudulent over-billing of clients, *see, e.g., Matter of Kroll*, 212 A.D.2d 220, 630 N.Y.S.2d 512 (1st Dep't 1995), the comingling of attorney and client funds, *see, e.g., Matter of Powers*, 197 A.D.2d 57, 611 N.Y.S.2d 728 (4th Dep't 1994), and other criminal activity, such as money laundering, *see, e.g., Matter of Backal*, 208 A.D.2d 176, 622 N.Y.S.2d 699 (1st Dep't 1995).

In this case, Gidatex had a right to determine whether Campaniello had complied with Gidatex's "cease and desist" letter dated October 16, 1997. The evidence gathered by the investigators demonstrates that defendants' employees informed consumers that plaintiff's business no longer exists and that the other brands of furniture sold by Campaniello are "the same" as the Saporiti Italia brand. Neither of these statements are true. Courts have recognized the relevance of such evidence. *See, e.g., Niesig v. Team I*, 76 N.Y.2d 363, 373, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990) (rejecting suggestion of bright-line rule barring opposing counsel from conducting ex parte interviews of any employee of represented corporation because prohibition would compromise "the values served by permitting access to relevant information."). For example, in *Apple Corps Ltd., MPL v. Int'l Collectors Soc.*, 15 F.Supp.2d 456 (D.N.J.1998), the court condoned a secret investigation conducted by copyright owners of defendant's business activity to determine defendant's compliance with the terms of a consent decree. In *Apple*, plaintiffs had sued to enjoin a marketer and distributor of collectors' stamps from selling postage stamps featuring copyrighted images of The Beatles. A consent order enjoined some stamp sales, but allowed defendants to sell certain stamps featuring John Lennon's name and image pursuant to a licensing agreement. *See id.* at 460. To test defendant's compliance with the consent order, plaintiffs' counsel instructed her secretary, her co-counsel's stepson, an associate's husband, and private investigators to telephone the defendant posing as interested consumers and attempt to order the enjoined stamps. *Id.* at 462–464. Plaintiffs' counsel telephoned defendant herself using a false name and provided the other callers with a script describing specific stamps.

Upon discovering that the defendant was violating the consent order, plaintiffs filed a motion for contempt. After granting plaintiffs' motion, the district court considered and rejected defendant's cross-motion for . sanctions against plaintiffs' counsel for violating New Jersey's attorney disciplinary rules forbidding attorneys from engaging in deceitful conduct and from communicating with parties represented by counsel. *Id.* at 472. Noting that the ethical rules were "intended to 'prevent situations in which a represented party may be taken advantage of by adverse counsel,' " *id.* at 474 (quoting *Niesig*, 76 N.Y.2d at 370, 559 N.Y.S.2d 493, 558 N.E.2d 1030), the court found the rules inapplicable to counsel's conduct. "The only misrepresentations made were as to the callers' purpose in calling and their identities. They posed as normal consumers." *Apple*, 15 F.Supp.2d at 474. "If Plaintiffs' investigators had disclosed their identity and the fact that they were calling on behalf of Plaintiffs, such an inquiry would have been useless to determine [defendant's] day-to-day practices in the ordinary course of business." *Id.* at 476.

The court further noted that this type of conduct, used frequently by undercover agents in criminal cases and by discrimination testers in civil cases, has not been condemned on ethical grounds by courts, ethics committees, or grievance committees. *Id.* at 475; *see also* David B. Isbell & Lucantonio N. Salvi, *Ethical Responsibilities of Lawyers for Deception by Undercover Investigators and Discrimination Testers: An Analysis of the Provisions Prohibiting Misrepresentations Under the Model Rules of Professional Conduct*, 8 Geo. J. Legal Ethics 791, 804 (Summer 1995). Indeed, "[t]he prevailing understanding in the legal profession is that a public or private lawyer's use of an undercover investigator to detect ongoing violations of the law is not ethically proscribed, especially where it would be difficult to discover the violations by other means." *Apple*, 15 F.Supp.2d at 475 (citing the Declaration of Professor Bruce A. Green, Co–Chair, ABA Litigation Section Committee on Ethics and Professionalism and Vice–

Chair of the NYSBA Committee on Professional Ethics).

In the instant case, enforcement of the trademark laws to prevent consumer confusion is an important policy objective, and undercover investigators provide an effective enforcement mechanism for detecting and proving anti-competitive activity which might otherwise escape discovery or proof. It would be difficult, if not impossible, to prove a theory of "palming off" without the ability to record oral sales representations made to consumers. Thus, reliable reports from investigators posing as consumers are frequently recognized as probative and admissible evidence in trademark disputes. *See, e.g., Nikon, Inc. v. Ikon Corp.,* 803 F.Supp. 910, 921–922 (S.D.N.Y.1992), *aff'd,* 987 F.2d 91, 95–96 (2d Cir.1993) (evidence of investigators' interviews with non-party sales clerks admitted to show "passing off" and actual confusion among consumers between "Ikon" and Nikon cameras); *see also Louis Vuitton S.A. v. Spencer Handbags Corp.,* 597 F.Supp. 1186, 1188 (E.D.N.Y.1984), *aff'd,* 765 F.2d 966 (2d Cir.1985) (affirming permanent injunction issued after considering secretly recorded videotape of defendants' principals meeting with undercover investigator hired by plaintiff to discuss counterfeiting scheme); *Union Carbide v. Ever–Ready, Inc.,* 531 F.2d 366, 384 (7th Cir.1976) (overturning district court's exclusion of testimony in trademark infringement trial of undercover "shopper" sent by plaintiff into department store to purchase defendant's goods).

### III. Campaniello Fails to Meet Its Burden of Demonstrating that Gidatex's Counsel Violated the Ethical Rules

Assuming, arguendo, that the ethical rules cited by defendants are applicable to the situation at hand, defendants have not met their burden of demonstrating that Gidatex's counsel has violated these rules. Courts in this Circuit have adopted a three-part test to determine whether counsel has violated DR 7–104(A)(1): Did counsel communicate with a "party"? If so, did counsel know that the party was represented by a lawyer in this matter? Finally, did counsel "cause" the communication to occur? *See, e.g., Miano,* 148 F.R.D. at 75.

According to Campaniello, Bailey's conduct falls within DR 7–104(A)(1) because: (1) Campaniello's sales clerks are "parties"; (2) Bailey knew, both before and after filing the Complaint, that Campaniello was represented by counsel; and (3) Bailey "caused" his investigators to communicate with the sales clerks. It is undisputed that Bailey hired the investigators to determine whether Campaniello was inappropriately using the Saporiti Italia trademark in connection with its sales of other brands of furniture. Therefore, the question of whether Bailey violated DR 7–104 turns on whether the sales clerks were parties, whether they were represented by counsel at the time of the communication, and whether Bailey knew they were represented by counsel at that time.

### A. Were the Sales Clerks "Parties"?

A corporate employee is a party within the meaning of DR 7–104(A)(1) if, for example, "(1) he/she had high-level managerial responsibility and was capable of binding the corporation; or (2) his/her acts or omissions may be imputed to the corporation for the purposes of civil or criminal liability; or (3) his/her statements may constitute an admission by the [the corporation]." *Miano,* 148 F.R.D. at 76–77 (citing *Polycast Tech. Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621, 624 (S.D.N.Y.1990); *University Patents, Inc. v. Kligman,* 737 F.Supp. 325, 327 (E.D.Pa.1990); *Chancellor v. The Boeing Co.,* 678 F.Supp. 250, 253 (D.Kan.1988); *McKitty v. Bd. of Educ.,* 86–3176, 1987 WL 28791,*2 (S.D.N.Y. December 16, 1987); *Massa v. Eaton Corp.,* 109 F.R.D. 312, 313 (W.D.Mich.1985); *Niesig,* 76 N.Y.2d at 363, 559 N.Y.S.2d 493,

558 N.E.2d 1030). The New York Court of Appeals has defined "party" to include:

corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation (in effect, the corporation's "alter-egos") or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel. All other employees may be interviewed informally.

*Niesig*, 76 N.Y.2d at 374, 559 N.Y.S.2d 493, 558 N.E.2d 1030.

Campaniello's sales clerks are low-level employees with no management responsibilities whatsoever. As a result, they would generally not be considered parties under DR 7–104(A)(1), because they have no apparent or actual authority to bind the company, and their statements would not usually constitute admissions by the company. In the instant case, however, Gidatex—despite its strenuous assertions to the contrary—is seeking to use the sales clerks' statements to impute liability to Campaniello. Put another way, Gidatex intends to offer the clerks' statements regarding Saporiti Italia furniture as admissions by Campaniello itself that Campaniello is involved in a "palming-off" scheme. As a result, I find that under the specific circumstances presented here, the sales clerks are "parties" for purposes of DR 7–104(A)(1).

### B. Were Defendants "Represented" by Counsel?

Typically, before a complaint is filed, there is uncertainty as to whether a party is represented, but after it is filed, it is likely that a party has representation. *See Miano*, 148 F.R.D., at 77–78.

[An] organization should be considered a party anytime it has *specifically retained counsel* to represent its interests regarding the *subject of representation* or has specifically referred the matter to house counsel.... [T]he retaining of an attorney by a party claiming protection of the rule *must have ·a nexus to a potential dispute.* ... The fact that

[defendant] had counsel "for general business purposes" was irrelevant, however, *absent a specific connection to a potential lawsuit.*

*Federal Sav. & Loan Ins. Corp. v. Hildenbrand*, No. 89–A–535, 1989 WL 107377, *4 (D.Colo. Sept. 8, 1989) (emphasis added). Here, two of the four investigators' visits occurred prior to the filing of the Complaint, and a third occurred prior to the date Gidatex served the Complaint on Campaniello. However, defendants argue that based on the adversarial history of these parties, Gidatex knew Campaniello was represented both before and after Gidatex filed its Complaint. Indeed, for over three years prior to the initiation of this trademark infringement suit, the parties were embroiled in two additional lawsuits on two different continents involving Campaniello's claims against Gidatex for breach of contract, misrepresentation, unjust enrichment and fraud. During those litigations, Campaniello was represented by three different trial counsel, none from the law firm that represents Campaniello in the instant trademark action.

Despite the permanent adversarial status of the parties, Gidatex adheres to the technical argument that Campaniello had not yet specifically retained counsel to represent it in this trademark infringement dispute. It is true that with respect to this dispute Gidatex's counsel sent an October 16, 1997 "cease and desist" letter directly to Mr. Thomas Campaniello and not to Campaniello's counsel. It is also true that at the time of the first two visits of the investigators, December 12 and 15, 1997, Gidatex had not yet initiated its trademark infringement case, and Campaniello had not yet retained its current counsel. Nevertheless, after years of related litigation between Gidatex and Campaniello, it is unrealistic to conclude that Bailey did not know that Campaniello was represented by counsel.

### C. No Violation of Disciplinary Rules

Although Bailey's conduct technically satisfies the three-part test generally used

to determine whether counsel has violated the disciplinary rules, I conclude that he did not violate the rules because his actions simply do not represent the type of conduct prohibited by the rules. The use of private investigators, posing as consumers and speaking to nominal parties who are not involved in any aspect of the litigation, does not constitute an end-run around the attorney/client privilege. Gidatex's investigators did not interview the sales clerks or trick them into making statements they otherwise would not have made. Rather, the investigators merely recorded the normal business routine in the Campaniello showroom and warehouse.[3]

### D. Exclusion of Evidence

■ Finally, it must be noted that DR 7–104(A)(1) and DR 1–102(A)(4) are *disciplinary rules*, not statutes. The Second Circuit Court of Appeals has ruled that a court is not obligated to exclude evidence *even* if it finds that counsel obtained the evidence by violating ethical rules. *See United States v. Hammad*, 858 F.2d 834, 837 (2d Cir.1988) (discouraging suppression of evidence to punish unethical conduct of prosecutor). Likewise, New York State courts will admit evidence procured by unethical or unlawful means in violation of the NYSBA Code of Professional Responsibility. For example, in *Stagg v. New York City Health & Hosp. Corp.*, 162 A.D.2d 595, 556 N.Y.S.2d 779 (2d Dep't 1990), the court admitted testimony allegedly obtained in violation of DR 7–104(A)(1) finding that:

> even if the matters to which the investigator testified were unethically obtained, they nevertheless would be admissible at trial. New York follows the common law rule that the admissibility of evidence is not affected by the means through which it is obtained. Hence, absent some constitutional, statutory, or decisional authority mandating the suppression of

otherwise valid evidence [ ], such evidence will be admissible even if procured by unethical or unlawful means.

*Stagg,* 556 N.Y.S.2d at 780. Here, the remedy of preclusion would not serve the public interest or promote the goals of the disciplinary rules.

### IV. Conclusion

For the foregoing reasons, Campaniello's motion in limine to preclude Gidatex from offering testimony, reports, and recorded conversation of its investigators is denied.

---

**3.** The above-analysis of the technical requirements of the disciplinary rules only underscores my earlier conclusion that these rules do not apply in the context of this case.