OPINION OF THE COURT
Herbert Kramer, J.
To what extent may a lawyer help his client secretly record *403 telephone conversations with third parties without violating the disciplinary rules?
In this workplace racial bias suit, plaintiffs allege that obscenities, foul language, racial slurs and epithets directed at women and African-Americans were common parlance at the Key Food offices. Approximately one year before this lawsuit was instituted, plaintiff Healy, a Key Food employee, conferred with counsel with respect to this problem and sought his advice regarding the legality of secretly taping some of these comments. Counsel advised her and in response to her request obtained the services of a private investigator who procured recording equipment and instructed her in its use in counsel’s presence.[1] On the tapes a voice alleged to be that of defendant Grenard, a Key Food supervisor, is heard asking whether a job applicant is a “f * * * g n * * * r,” whether she has dreadlocks and if she smells. Counsel disseminated this information to the press.[2]
Crying “foul,” defendants move pursuant to Code of Professional Responsibility DR 1-102 (a) (2), (4) (22 NYCRR 1200.3 [a] [2], [4])[3] (prohibiting fraudulent or dishonest conduct) and DR 7-107 (a) (22 NYCRR 1200.38 [a])[4] (limiting the right to make public statements) to suppress the contents of the taped *404 conversations and disqualify counsel from any further representation of the plaintiffs.[5] **5 Plaintiffs oppose with counsel arguing vigorously that his conduct was well within the permissible bounds of the disciplinary rules.
In deciding this issue, we find ourselves in much the same circumstances as did our Court of Appeals in Neisig v Team 1 (76 NY2d 363, 369 [1990]) in that we are called upon to interpret the affect of a disciplinary rule. Consequently we, too, must “begin our analysis by noting that what is at issue is a disciplinary rule, not a statute [for which] * * * we are of course bound to implement the will of the Legislature * * * The disciplinary rules have a different provenance and purpose. Approved by the New York State Bar Association and then enacted by the Appellate Divisions, the Code of Professional Responsibility is essentially the legal profession’s document of self-governance, embodying principles of ethical conduct for attorneys as well as rules for professional discipline * * * While unquestionably important, and respected by the courts, the code does not have the force of law * * * This distinction is particularly significant when a disciplinary rule is invoked in litigation, which in addition to matters of professional conduct by attorneys, implicates the interests of nonlawyers * * * In such instances, we are not constrained to read the rules literally or effectuate the intent of the drafters, but look to the rules as guidelines to be applied with due regard for the broad range on interests at stake. ‘ “When we agree that the Code applies in an equitable manner to a matter before us, we should not hesitate to enforce it with vigor. When we find an area of uncertainty, however, we must use our judicial process to make our own decision in the interest of justice to all concerned.” ’ ” (Id. at 369-370.)
Here we may begin our analysis with the code itself since “it applies in an equitable manner to [the] matter before us.” (Id.) Contemporary ethical opinions hold that a lawyer may secretly record telephone conversations with third parties without violating ethical strictures so long as the law of the jurisdiction *405 permits such conduct. (ABA Comm on Ethics and Professional Responsibility Formal Op 422 [2001] ;[6] New York County Lawyers’ Assn Comm on Professional Ethics Op 696 [1993].)[7] *406 While earlier opinions condemned such practice,[8] ******8 there was a groundswell of agreement, even then, among ethics committees which recognized the existence of circumstances “in which requiring disclosure of a recording of a conversation [would] defeat a legitimate and even necessary activity. For that reason, even those authorities that would [condemn nonconsensual recordings] tended to recognize numerous exceptions” *407 such as the documentation of criminal utterances, threats, obscene telephone calls and the like, and for testers in investigations for housing discrimination and trademark infringement. (ABA Formal Op 422 [2001].)
Indeed, undercover agents in criminal cases and discrimination testers in civil cases routinely use clandestine investigatory techniques which are not condemned on ethical grounds by courts, ethics committees or grievance committees because these techniques address policy objectives in that they make it possible to detect and prove activity which may otherwise escape discovery or proof. (Gidatex, S.r.L. v Campaniello Imports, Ltd., 82 F Supp 2d 119, 123 [SD NY 1999].)
Here, too, we have activity that might otherwise evade discovery or proof and a circumstance which has policy interests as compelling as those we find in housing discrimination matters. The interests at stake here transcend the immediate concerns of the parties and attorneys involved in this racial bias action. The public at large has an interest in insuring that all of its members are treated with that modicum of respect and dignity that is the entitlement of every employee regardless of race, creed or national origin. Weighed against this ethical imperative, the attorney’s conduct, even had it involved more hands-on participation than it actually did, should not be subject to condemnation under the disciplinary rules and does not warrant the extreme sanction of suppression or disqualification. Nor for that matter does exposure of the issues at bar to the press require such result. All of us are flooded with information on a daily basis and today’s news is tomorrow’s fish wrapper — quickly discarded and forgotten. Moreover, any recollection of these events that may remain in some juror’s memory will presumptively be purged by appropriate jury selection procedures and charges.
Furthermore, and contrary to defendant’s claims, there has been no showing of a violation of DR 7-104 (a) (l)[9] sufficient to warrant a hearing. This court finds no evidence to suggest that the taping was done at counsel’s behest. Nonetheless even assuming arguendo that a hearing would, somehow, disclose that fact, suppression of the tapes would not follow. “New York fol *408 lows the common-law rule that the admissibility of evidence is not affected by the means through which it is obtained. Hence, absent some constitutional, statutory, or decisional authority mandating the suppression of otherwise valid evidence * * * such evidence will be admissible even if procured by unethical or unlawful means * * * Inasmuch as there is no independent constitutional, statutory, or overriding policy basis requiring a departure from the common-law rule in this case, [this court would admit] the challenged testimony even if an ethical violation were established.” (Stagg v New York City Health & Hosps. Corp., 162 AD2d 595, 596-597 [2d Dept 1990]; see also Tabbi v Town of Tonawanda, 111 Misc 2d 641 [Sup Ct 1981].)
The defendant’s motion is denied.

. It is further acknowledged that counsel paid the investigator and tested the device at the meeting. Counsel is heard on tape as his client is being instructed in the use of the recorder and on another tape apparently recorded over the telephone is heard telling the client to “test the thing right now.” 'For approximately two weeks prior to leaving Key Food, Healy secretly recorded her in-person conversations and telephone calls. Counsel’s firm took custody of the devices after they were used.

. In January 2001 plaintiffs commenced this lawsuit. During June of 2002, plaintiffs’ counsel arranged for interviews with the plaintiffs regarding this litigation. Television stations WNBC, WABC, and Fox 5 broadcasted stories concerning this case at various times in June 2002, and several newspaper stories were also written. These stories all discuss the content of the taped conversations, the “shocking” nature of this type of conduct in a corporate environment, the negative reaction Key Food has received, and that other employees of Key Food have since surfaced with similar allegations.

. Code of Professional Responsibility DR 1-102 (22 NYCRR 1200.3) provides in part that “(a) A lawyer or law firm shall not: * * * (4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.” It further states that a lawyer shall not “(2) Circumvent a disciplinary rule through the actions of another.”

. DR 7-107 (22 NYCRR 1200.38), entitled “Trial publicity,” provides: “(a) A lawyer participating in or associated with a criminal or civil matter, or associated in a law firm or government agency with a lawyer participating in or associated with a criminal or civil matter, shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by *404 means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in that matter * * *.”

. In the alternative, defendants request a hearing to determine whether there was a possible violation of DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) which prohibits a lawyer from communicating or causing another to communicate with a represented party. Defendant Grenard also moves to compel responsive answers to certain interrogatories relating to the procurement of the taped conversations. Grenard’s motion is rendered moot by this decision.

. American Bar Association Committee on Ethics and Professional Responsibility Formal Opinion 01-422 (2001) recites in pertinent part: “A lawyer who electronically records a conversation without the knowledge of the other party or parties to the conversation does not necessarily violate the Model Rules. Formal Opinion 337 (1974) accordingly is withdrawn. A lawyer may not, however, record conversations in violation of the law in a jurisdiction that forbids such conduct without the consent of all parties, nor falsely represent that a conversation is not being recorded. The Committee is divided as to whether a lawyer may record a client-lawyer conversation without the knowledge of the client, but agrees that it is inadvisable to do so.” This constitutes a significant change from past rulings.
“In Formal Opinion 337, this Committee stated that with a possible exception for conduct by law enforcement officials, a lawyer ethically may not record any conversation by electronic means without the prior knowledge of all parties to the conversation. The position taken in Opinion 337 has been criticized by a number of state and local ethics committees, and at least one commentator has questioned whether it survives adoption of the Model Rules of Professional Conduct. The Committee has reexamined the issue and now rejects the broad proscription stated in Opinion 337. We also describe certain circumstances in which nonconsensual taping of conversations may violate the Model Rules. * * *
“Criticism of Opinion 337 has occurred in three areas. First, the belief that nonconsensual taping of conversations is inherently deceitful, embraced by this Committee in 1974, is not universally accepted today. The overwhelming majority of states permit recoding by consent of only one party to the conversation. Surreptitious recording of conversations is a widespread practice by law enforcement, private investigators and journalists, and the courts universally accept evidence acquired by such techniques. Devices for the recording of telephone conversations on one’s own phone readily are available and widely are used. Thus, even though recording of a conversation without disclosure may to many people ‘offend a sense of honor and fair play,’ it is questionable whether anyone today justifiably relies on an expectation that a conversation is not being recorded by the other party, absent a special relationship with or conduct by that party inducing a belief that the conversation will not be recorded.” (Id.)

. New York County Lawyers’ Association Committee on Professional Ethics Opinion 696 recites in pertinent part:
“This Committee has received various inquiries from lawyers who wish to record their telephone conversations with third parties, including clients and other lawyers, without such third parties’ knowledge and also to assist clients in secretly recording their telephone conversations with third parties.
‘We have been asked to address whether secretly recording such telephone conversations violates any provision of the Lawyer’s Code of Professional Responsibility (1990). * * *
“We believe that the secret recording of a telephone conversation, where one party to the conversation has consented, cannot be deceitful per se. Since such conduct is authorized by New York Penal Law §§ 250.00 and 250.05 (McKinney 1967), a party to a telephone conversation should reasonably *406 expect the possibility that his or her conversation may be recorded. See N.Y. State 515 (1979) (permitting lawyer to counsel client about legality of client secretly recording conversation with third party).
“In fact, the rule against secret recordings has been relaxed with respect to prosecutors and defense counsel involved in criminal investigations. See, e.g., N.Y. City 80-95. Prosecutors use secret recordings pursuant to Title III of the Omnibus Crime Control Streets Act of 1968, which specifically authorizes the use of secret recordings by the Federal Government where one party to the conversation has consented.
“As well, normative standards change over time. Advertising, for example, was once considered to be unprofessional and, hence, unethical by this Committee. After the decision of the United States Supreme Court in Bates v. State Bar, 433 US 350 (1977), however, most of the ethical strictures against advertising were removed. Similarly, former pronouncements that secret recordings by lawyers are inconsistent with standards of candor and fairness are no longer viable in today’s day and age. Perhaps, in the past, secret recordings were considered malevolent because extraordinary steps and elaborate devices were required to accomplish such recordings. Today, recording a telephone conversation may be accomplished by the touch of a button, and we do not believe that such an act, in and of itself, is unethical.”

. See American Bar Association Committee on Professional Responsibility Formal Opinion 337 (1974), decided under the Code of Professional Responsibility, which incorporated the principle that a lawyer “should avoid even the appearance of professional impropriety.” (See n 5, supra.) That admonition was omitted as a basis for professional discipline nine years later in the ABA’s adoption of the Model Rules of Professional Conduct. Opinion 337 further stated, however, that “conduct which involves dishonesty, fraud, deceit or misrepresentation in the view of the Committee clearly encompasses the making of recordings without the consent of all parties.” The Model Rules’ prohibition against conduct involving deceit or misrepresentation was preserved in Model Rules of Professional Conduct rule 8.4 (c), and thus we must consider whether that conclusion by the Committee in Opinion 337 is correct under the model rules.
Reception by state and local bar committees of the principle embraced by Opinion 337 has been mixed. Courts and committees in a number of states have adopted the position of the opinion. The State Bar of Michigan Standing Committee on Professional and Judicial Ethics initially agreed with Opinion 337, but later found that the ethics of nonconsensual recording should be considered on a case-by-case basis. The New York State Bar adopted a per se rule condemning nonconsensual recordings while the New York City Bar recognized exceptions to that position in the case of prosecutors and defense counsel in criminal investigations. The New York County Bar more recently opined that recording of a conversation without the consent of the other party is not, in and of itself, unethical.

. Disciplinary Rule 7-104 (a) (1) (22 NYCRR 1200.35) provides in pertinent part: “During the course of the representation of a client a lawyer shall not * * * [c]ommunicate or cause another to communicate * * * with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so.”